## DYER v. THE BR. BANK AT MOBILE.

1. Real property, purchased by the State Bank for the purpose of securing a debt, and not for speculation, is exempt from taxation by the act of January, 1845, whether the title be legal or equitable.
2. The omission of an owner of real estate, to apply to a court of chancery, and enjoin a sale of the property, will not impair his legal rights.
3. If one in possession of real property is liable to pay the taxes for that year, his intsrest only can be sold for the tax. By a purchase at a tax sale, the purchaser acquires the interest of the party whose property is sold, and not the independent, or superior, or ultimate title of a third person.
4. A compromise, by which one pays a sum of money to another, as an inducement to relinquish the possession of real estate, does not indicate a want of title, where no adverse title is shown.

Error to the Circuit Court of Tuscaloosa. Before the Hon. T. A. Walker.

TRESPASS to try title to a house and lot in Tuscaloosa, by the plaintiff in error.

From a bill of exceptions, it appears that the plaintiff, to show title in himself, read a deed from the Mayor of the city of Tuscaloosa, conveying to him the premises in controversy, upon a sale for taxes, and proved the assessment of the tax, and sale according to law, the plaintiff being the highest bidder. The deed bears date the 25th November, 1845.

The defendant then read a deed executed to it on the 30th September, 1842, by R. T. Clyde, register in chancery, conveying the same premises to the Bank, in virtue of a sale made under a decree of the court of chancery.

The plaintiff then showed, that the defendant had filed a bill in chancery to prevent certain persons from committing waste on the property, and read a decree made by the chancellor, in which the chancellor dismissed the bill for want of equity, holding that the possession of Ellen M. Dailey, was adverse to the bank.

The plaintiff also produced the record of a suit to try titles in the circuit court, between the defendant as plaintiff, and Ellen M. Dailey, and Emily Royal as defendants, which was commenced on the 15th July, 1845. Defendants claiming a dower interest, and being in possession on the 3d of April, 1847, the plaintiff dismissed the suit, and gave to defendants $250 to give up the possession, and that then the bank for the first time went into possession. It was not shown hy the plaintiff that Mrs. Royal, or Mrs. Dailey, had any title to the lots, and it was denied by the defendant that they had any, but that the $250 was paid by way of compromise of the suit.

Upon this state of facts the court held, the plaintiff could not recover—that the lots being the property of the State Bank, were not liable to taxation. This is now assigned as error.

J. B. WALLACE, for plaintiff in error, made the following points:

1. The taxes were assessed as directed by the 11th section of the charter—the court can't know whether by the oath of Mrs. Dailey and Mrs. Royal, or by three assesors. The tax on the lots was recoverable from them, and the money could have been made by execution—they could not gainsay that, being in possession and claiming title—if an execution against them would be good, it follows that the proceeding *in rem*, to effect the same object, would be good also.

2. The bank stood by pretending to have title, but not disclosing it, suffered the taxes to be assessed. The lots were then advertised three months, and then sold at public outcry; and then suffered the twelve months to expire, in which the lots could be redeemed. Does the bank not stand in the same category with one who stands by and suffers a stranger to sell to an innocent purchaser his property, without disclosing his title?

3. The bank had ample remedy—equity will stay the sale of lots illegally assessed. Burnett v. Cincinatti, 3 Ohio, 73. Chancery will cancel a tax deed in a proper case. Bacon v. Conn, 1 Smede & M. 348. If Dyer had went into possession under his deed, could the bank recover in eject-

ment? Under the circumstances disclosed in the bill of exceptions, they would have to go to equity, and obtain a cancellation of Dyer's deed, and pay him back the purchase money.

4. The purchase by the bank was a void purchase. It has no authority under its charter to go to register's sales and buy real estate—if the charter does not give the power, the act is void, and the city corporation may so treat it.

J. L. & P. MARTIN, contra, cited the act of 27th January, 1845, exempting the real and personal property of the bank from taxation, which they insisted covered the case.

COLLIER, C. J.—An act of the legislature passed in January, 1845, "To exempt the real and personal estate of the State Bank and Branches from taxation," enacts, that from and after its passage, the real and personal estate belonging to the State Bank, or any of its Branches, shall be exempt from taxation, for either state, county, corporation, or other purposes. The terms of this statute are exceedingly comprehensive, and exempt from taxation not only the real estate on which the banking houses are situated, but all the real and personal estate of the institutions designated, wherever it may be in the State. This conclusion is so perfectly clear upon the mere reading of the act, that an attempt to illustrate it, would tend rather to mistify than elucidate the point.

It may be conceded, that the defendant was not authorized to invest its funds in real estate with a view to speculation, or for a purpose not contemplated by its charter. Yet we apprehend it was allowable for it to advance upon, or to purchase such property for the purpose of securing debts, if no other, and in the absence of all proof, it cannot be assumed that the purchase in the present case was illegal, and unauthorized. It may be intended that the defendant was a subsequent incumbrancer of the premises in question, that they were of greater value than the sum which the decree required to be made, and that the object of the defendant's purchase was to collect the demand due it by a resale. If this, or some other legitimate object was not contemplated,

it devolved upon the plaintiff to show it, if it could avail him, and the defendant cannot be prejudiced by the omission to do so. Saltmarsh v. P. & M. Bank at this term.

The power of a court of chancery is certainly competent to arrest the sale of real estate when improperly levied on under a *fieri facias*, or where a sale is about to be made for the collection of taxes illegally assessed, or which the property is not liable to satisfy. Lyon et al. v. Hunt et al. 11 Ala. R. 295, and cases there cited. But it is by no means a sequence from this concession, that because the defendant did not invoke the protective, or preventive justice of equity, he shall be estopped from defending his title. An unwillingness to incur the expense of a suit in chancery; to execute bond with surety, which would be a pre-requisite to an injunction, or some other cause, might disincline it thus to proceed. However this may be, a party thus situated may stand upon his legal rights, and assert or defend them in a court of law. Williamson v. Branch Bank at Mobile, 7 Ala. Rep. 906.

If it were competent for the directory of the bank to compromit its interests by the omission to assert them before the sale was made, no such effect can be given to their silence, in the case before us. The record does not discover a *scintilla* of proof, from which it can be inferred that any officer of the bank was present at the sale, or informed that it was to take place; so that even if the strict rule which estops an individual from asserting his title, who silently stands by and sees his estate sold, applies, the defendant is not concluded.

There is not only an absence of proof to show that the defendant was informed of the time of sale, but it does not appear that he was advised of the assessment of the tax.

If the persons in possession in 1845, were liable to pay the tax for that year, their interest only could have been sold to enfore its payment; and if the defendant had a paramount title, dating back to a time previous, its right could not be impaired by the sale. It is clear that a purchaser at a sale

under judicial process, for the payment of taxes, purchases the interest of the party whose property is sold, and not the independent and superior, or ultimate title of a third person. This seems to us to be a proposition so clear, that it need but be mentioned, to receive universal concurrence.

The purchase by the defendant at the register's sale under the decree in chancery, *prima facie*, when coupled with the possession, invested the bank with a legal title sufficient to defeat a recovery by the plaintiff. But if the defendant's title was merely equitable, the assessment of the tax by the corporation was unauthorized, and all subsequent proceedings to enforce its collection were consequently illegal. Upon either hypothesis, the Mayor's deed would be merely void.

No inference prejudicial to the defendant can be made from the dismissal of the bill to stay waste; for the chancellor did not rest his decree upon any defect in the defendant's title, but on other and independent grounds. The compromise by the defendant of the action for the recovery of the possession, by paying to the parties who refused to yield it up, a sum of money as an inducement to relinquish the premises, does not indicate a want of title in the bank. Perhaps, it may have been supposed that litigation would be protracted and expensive, that the persons in possession were not able to pay the value of the rent; or some other cause may have made an adjustment of the controversy desirable. But if no particular reason operated upon the defendant, certainly it was allowable to pay for the possession of the property, without prejudicing its title; especially when no adverse title is shown in the plaintiff, or any third person.

This view is decisive of the case, and the judgment of the circuit court is consequently affirmed.