## Doe on the demise of Dunn and Others *v.* Hearick and Others.

A rightful title is not necessary to constitute an adverse possession such as will sustain the plea of the statute of limitations. Possession under claim or color of title is sufficient. The fact of possession and the *quo animo* it commenced, are the only tests.

Possession taken and continued in good faith, under an assertion of right and a claim of title believed to be good, may be adverse, though the claim of title be under a sale for taxes prior to which the land sold was not advertised.

When a purchaser of land from the *United States*, has made the final payment and is entitled to a patent, he is the equitable owner of the premises; and if an adverse possession be set up, the statute of limitations will run against such purchaser; for after becoming entitled to a patent, he might at any time obtain possession of the premises by a suit in equity.

Under the R. S. of 1824, the collector's conveyance of lands legally sold for taxes, invested the purchaser with an absolute estate in fee simple, even where the title of the delinquent tax-payer was simply an equitable one, derived from the *United States* by entry, the final payment of the purchase-money having been made, but the patent not having yet been issued.

The patent, in such case, when issued, inured to the benefit of the collector's grantee.

Saturday,
June 2.

APPEAL from the *Switzerland* Circuit Court.

Davison, J.—Ejectment for the east half of the southeast quarter of section eleven, &c., in *Switzerland* county. The suit was instituted *November* 10, 1848, by the appellants. *Vienna Hearick* and others, who claimed title under one *James Hearick*, deceased, were the defendants.

The issues were submitted to the Court, who found for the defendants, and, having refused a new trial, rendered judgment, &c.

The record contains the following agreement of facts:

On the 19th of *May*, 1818, one *Samuel West*, of *Cincin-*

*nati, Ohio*, entered the south-east quarter of section eleven, in township two north, of range one west, in said county, containing one hundred and sixty-one acres, and paid 80 dollars, one-fourth of the purchase-money. After this, he accepted the provisions of the act of congress of *March*, 1821, giving further credit to the purchasers of public lands. The certificate of further credit granted under the provisions of the act, was afterwards assigned by him to *John H. Piatt*. This assignment was made between the 29th of *September*, 1821, the date of the certificate, and the death of *Piatt*, which occurred in *December*, 1822; and on the 12th of *April*, 1825, his heirs, by his administrator, accepted the provisions of the act of congress of *May*, 1824, relinquished the west half of said quarter section, applied the moneys which had been paid towards payment for the land in controversy in this suit, and also advanced a further sum in final payment for the same, and on the 10th of *December*, 1845, a patent therefor was issued to said heirs. It is admitted that the persons suing as lessors of the plaintiff, excepting *Isaac Dunn*, are the surviving heirs of *John H. Piatt*, and, further, that *Dunn* holds thirty acres of said east half, lying on the west end of it, which thirty acres, not being in the defendants' possession, are not in this controversy. In the year 1824, the land in suit was assessed for taxation for state and county purposes for that year, as non-resident lands. On the 8th of *June*, 1824, a precept was issued and delivered to the collector of said county, commanding him to collect such taxes, and on the 6th of *October*, the land was, by virtue of the precept, sold by him to one *Abner Clarkson*, who having paid the purchase-money, received a certificate of purchase, which, among other things, declared that he would be entitled to a deed on the 6th of *October*, 1826, unless the land should be redeemed by the owner before that time. *Clarkson*, on the 3d of *July*, 1828, assigned the certificate to *Arthur Humphreys*, who, on the 15th of the same month, assigned it to *Samuel McIntire*, who, on the 6th of *September*, then next following, assigned it to *Stephen* and *Frisby Hicks*. These assignments were all in due form. On the 10th of

*November*, 1828, *Henry Banta*, the then collector of taxes for *Switzerland* county, conveyed the land by deed in fee to *Stephen* and *Frisby Hicks*, and they, on the 30th of *September*, 1835, conveyed to *James Hearick*, under whom the defendants, as his widow and heirs, claimed title. *McIntire*, in virtue of his assigned certificate, took possession of the land in the summer of 1828, and *Stephen* and *Frisby Hicks* were in possession of it in the fall of that year, and during the same fall built a mill thereon. They continued to occupy the land until they sold to *James Hearick*, when he took possession and occupied it until his death; and from the time he died, up until the trial of this cause, it has been in the possession of the defendants. It was agreed that everything not admitted, so far as regards the sale of the land for taxes, is denied.

These facts sufficiently prove that the defendants, and those under whom they claimed to have derived title, were in the continued and uninterrupted possession of the premises in contest for at least twenty years prior to the commencement of the present suit. Was that possession adverse? The land, as has been seen, was purchased from the *United States*, *May* 16, 1818. By an act of congress of *April* 19, 1816, it was taxable for state and county purposes, after the expiration of five years from the day of sale. U. S. Stat. at Large, p. 290, § 5. And was, consequently, liable to be taxed in 1824. In that year it was assessed, legally taxed, and, under a precept regularly issued, sold by the proper collector, who gave the purchaser a certificate of purchase. By this sale and certificate, it seems to us that he obtained at least a colorable title.

But it is argued that everything not admitted in the agreed case is denied, so far as regards the collector's sale; that the statute required the land to be advertised, and, as the record does not show that it was advertised, that fact was not admitted, but denied; and being thus denied and not proved, it must be intended that the land was sold without advertisement, and the result is, the collector's certificate and deed are void. In answer to this, it may be said that the statute under which the collector proceeded,

explicitly declares that his deed to the purchaser, or his assigns, shall be conclusive evidence that the sale was regular according to the provisions of the statute. R. S. 1824, p. 343. But suppose, as contended, that the deed is not conclusive, but mere *prima facie* evidence that the sale was regular, and that, in this instance, the collector, in the execution of the precept, had taken every step required of him by the law prescribing his duties; the defendants would, then, have the rightful title, and the statute of limitations would be inapplicable. Because to constitute an adverse possession such as will sustain the plea of the statute, a rightful title is not required. If there be a possession under a claim and color of title, it will be sufficient. Whenever this defense is set up, the idea of right is excluded. The fact of possession, and the *quo animo* it commenced, are the only tests. *Smith* v. *Burtis*, 9 Johns. 174.—*Jackson* v. *Newton*, 18 *id.* 355.—*Hearick* v. *Doe*, 4 Ind. R. 164.—Tillinghast's Adams on Eject., appendix, note A, p. 455, *et seq.*

In this case, it was fully proved that the possession of *McIntire*, and also of *Stephen* and *Frisby Hicks*, was commenced in good faith, under an assertion of right, and a claim of title which they believed to be good. Possession thus taken and continued may, in our judgment, be held adverse, though the claim of title be under a sale for taxes, when, in point of fact, the land sold was not advertised prior to the sale. *Pillow* v. *Roberts*, 13 How. 472.—*Vancleave* v. *Millikin*, 13 Ind. R. 105.—Blackw. on Tax Titles, 665, *et seq.*

The appellants assume another ground. They say that the statute of limitations did not commence running until the 10th of *December*, 1845, the date of their patent, because until that date they could not legally assert their right of possession. No authority is cited in support of this position, nor do we know of any. The record shows that the plaintiff's lessors made final payment for the land in suit in *April*, 1825; and it must be intended that they were then entitled to a patent, and, for aught that appears in the record, could have obtained one, and thus have

placed themselves in position to have asserted their rights, at a time when the statute would not have availed the defendants. After these lessors made final payment, and up until the patent was issued, they were, in equity, the owners of the premises. And there are authorities to the effect that the statute will run against the rightful owner of an equitable estate, where he has made no claim within the period of twenty years, and will constitute a bar to his recovery, if, during all that time, the possession has been held under a claim unequivocally adverse. *Elmendorf* v. *Taylor*, 10 Wheat. 168.—*Murphy* v. *Blair*, 12 Ind. R. 184. —Ang. on Limitations, 461. The lessors of the plaintiff having failed to redeem within the period stated in the collector's certificate of purchase, the statute of limitations, when possession was taken under that certificate, commenced running, and the rule is, when it once begins to run, it runs on, unless the party is restrained by some statute from pursuing his remedy. *Byrd* v. *Byrd*, 20 Miss. R. 144.—Tillinghast's Adams on Eject., p. 57, note 1.

If, indeed, the sale for taxes was irregular, so much so that the collector's deed conveyed no title, or if these lessors had redeemed the land within two years from the day of the tax sale, in either event, we perceive no reason why they, being the rightful owners of the equitable title, could not by suit in equity have obtained a decree giving them possession of the premises. It seems to us that they cannot be allowed to say that, until the date of their patent, they could not have legally asserted their right to possession.

Again, it is insisted that, though the forms of the statute were strictly pursued by the collector, the plaintiff is still entitled to recover; because, as the owners of the land held by entry, and not by patent or grant, the collector, when he sold it, sold an equitable title only, which is all the title his deed conveyed to the purchaser, and the title thus conveyed cannot, in this suit, be allowed to prevail against the legal title conveyed by the patent. This position, though plausible, does not seem to be conclusive. In view of the act of congress, to which we have referred, the state had a perfect right to authorize the assessment and

taxation of lands within her jurisdiction, and sold by the
United States, after the lapse of five years from the date of
the sale; and it seems to follow that she had the addi-
tional right to authorize the collection of such tax in the
mode prescribed by her revenue laws.  The revenue stat-
utes in force when this assessment, sale, and deed were
made, provide, inter alia, that all taxes upon real estate
shall be a lien thereon until paid; and in case there is no
goods or chattles out of which the tax on any tract of
land can be made, the collector is required, by virtue of his
precept, to seize the land so charged, and having given the
proper notice of sale, to sell the land seized, or so much
thereof as will pay the taxes charged thereon, and give the
purchaser a certificate describing the land sold, specifying
the amount paid therefor, and providing that, in case the
owner or claimant shall not, within two years from the
date of the certificate, pay the purchaser, his heirs or
assigns, the sum therein mentioned, with interest, &c., the
collector, or his successor, shall execute to such purchaser,
his heirs or assigns, in the name of the state, a conveyance
of the land, which shall vest in him an absolute estate in
fee simple, and shall be conclusive evidence that the sale
was regular, according to the provisions of the act.  R. S.
1824, pp. 342, 343, 344.  Now if these enactments were
at all effective, and we think they were, the conveyance in
this case by the collector, to Stephen and Frisby Hicks,
invested them with an absolute estate in fee simple, and, in
effect, divested the plaintiffs' lessors of all estate or interest
in the premises.  And the result is, the patent, when it
was issued, inured to the benefit of the collector's grantee,
and those claiming under him.  This conclusion seems to
accord with various well-considered decisions.  In Landis
v. Brandt, 10 How. U. S., it was held that a patent issued
in 1845, to Claymorgan and his heirs, by which the heirs
took the legal title, related back and inured to the protec-
tion of a title founded on a sheriff's sale of Claymorgan's
equitable interest, made in 1808.  So, in French v. Spen-
cer, 21 id. 228, it was laid down as settled doctrine, that
an entry in an United States land office, on which a patent

issues, no matter how long after the entry is made, shall relate to the entry and take date with it. The fiction of relation is, that an intermediate, *bona fide* alienee of the incipient interest, may claim that the patent inures to his benefit by an *ex post facto* operation, and receive the same protection at law that a Court of equity could afford him. See, also, *Ross* v. *Barland*, 1 Pet. 655.

If, then, it be assumed that the sale, in this instance, was regular, according to the provisions of the act prescribing the duties of the collector, it follows that the patent issued to the lessees of the plaintiff related back to the date of the entry of the land at the *United States* land office, and inured to the protection of the defendants' title under the collector's deed, and that their title, thus protected, should prevail in this action. We are unanimously of opinion that the judgment should be affirmed.

*Per Curiam.*—The judgment is affirmed with costs.

*J. Sullivan*, for the appellant.

*D. Kelso*, for the appellees.