3 So.2d 34

## DOWNING v. CITY OF RUSSELLVILLE et al.

### 8 Div. 96.

Supreme Court of Alabama.
March 20, 1941.

Rehearing Granted June 5, 1941.

Further Rehearing Denied June 30, 1941.

496

Curtis & Maddox, of Jasper, W. L. Chenault, of Russellville, and A. H. Carmichael, of Tuscumbia, for appellant.

J. Foy Guin, of Russellville, for appellees.

BROWN, Justice.

The original bill, filed by the appellant, seeks to enjoin the defendants, the City of Russellville and the Sheriff of Franklin County, from selling the lands described in the bill, of which the complainant, appellant here, is in possession, under a writ of venditioni exponas, for the reason, as alleged in the bill, that "said sale, would constitute a cloud upon the title of this complainant in and to said lands, and therefore, said sale should be enjoined."

While the bill in some of its allegations conforms to the requirements of the statute, Code of 1923, § 9905, Code 1940, Tit. 7, § 1109, authorizing bills to quiet title, it does not aver that the defendants claim or are reputed to claim some right, title or interest in or incumbrance upon such lands, nor does it call upon them "to set forth and specify his [their] title, claim, interest, or incumbrance, and how and by what instrument the same is derived and created." Code of 1923, § 9906, Code 1940, Tit. 7, § 1110.

It is, therefore, strictly speaking, not a statutory bill to quiet title within the rule that a bill and answer conforming to the requirements of the statute presents every issue necessary to a settlement of the controversy. McCaleb v. Worcester et al., 224 Ala. 360, 140 So. 595; Lamar v. Lincoln Reserve Life Ins. Co., 222 Ala. 60, 131 So. 223.

The bill alleges "that the complainant is the owner of and in the peaceable possession" of the real estate described in the bill, and the answer admits "that the complainant owns the real estate described in the bill, although subject to the lien of the respondent City of Russellville, as hereinafter set out."

The answer alleges:

"In the year 1927, and continuously thereafter until sometime in the year 1935, the tract of land in litigation was owned by one W. L. Chenault, who is the complainant's brother-in-law, and as to whom she is successor in title, and stands in privity of title. In said year 1927 the City of Russellville initiated proceedings under the statute for the assessment of said tract of land for the benefits accruing to it from the improvement of a street on which the same abuts. By judgment of the City Council an assessment was made final on, to-wit, December 11, 1928.

"Thereafter the said W. L. Chenault appealed to the Law & Equity Court of Franklin County, Alabama, from said judgment of assessment. The appeal was duly tried de novo in said court, as provided by law, and resulted in a judgment and decree of the Law & Equity Court dated May 12, 1937 assessing such tract of land in the sum of $4,000.00, and fixing a lien thereupon for the payment of the said assessment. A correct copy of said final judgment of the Law & Equity Court is hereto attached, marked Exhibit 'A' and made a part of this answer as fully as if set forth at length herein. The said judgment has never been paid, and therefore constitutes an enforceable lien upon said tract of land in the sum of $4,000.00, together with the interest thereon at the legal rate from the date thereof, and the costs and expenses of selling and conveying.

"Pending the above mentioned appeal, the said W. L. Chenault suffered such tract of land to sell for unpaid state and coun-

498

ty taxes, and at the tax sale the same was bid in for the State of Alabama. Thereafter, and during or about the year 1938, the complainant acquired title by tax conveyance from the State of Alabama; *although the respondents are informed, and believe, that in fact and in truth, she took title in trust for the use and benefit of the said W. L. Chenault, in an effort to escape the lien of the above mentioned judgment of assessment and they call upon her to deny and disprove this averment.*" (Italics supplied.)

The defendants make their answer a cross-bill, and pray, in short (1) that it be decreed that the title of the complainant is subordinate to the statutory lien of the City of Russellville arising under § 2199 of the Code 1923, Code 1940, Tit. 37, § 538, for local improvements, and that complainant's rights be limited to the recovery of the taxes and charges incurred in the foreclosure of the state's lien for state and county delinquent taxes, for which the lands were sold and bought in by the state, and, in the alternative (2) that the City of Russellville be allowed to redeem from said tax sale, and to that end said defendants offer to do equity.

The court overruled the complainant's demurrer to the cross-bill and from that decree this appeal is prosecuted.

The demurrer filed by the complainant, appellant here, to the cross-bill, takes the point, among others, that its allegations show that the state became the purchaser of the property at tax sale made by the taxing authorities for the default of the owner, W. L. Chenault, to pay the state and county taxes assessed against him, and that complainant purchased from the state and acquired the title at such purchase.

■ We pass over the italicized allegations of the cross-bill with the observation that they are not allegations of fact, but at most allegations of information and belief, and are without probative force, to controvert the admitted fact that complainant is the owner and holds the legal title to the property. Cullman Property Company v. H. H. Hitt Lumber Co. et al., 201 Ala. 150, 154, 77 So. 574.

The insistence of appellant is that the sale of the lands for taxes, in due course, and purchase by the state at the tax sale foreclosed the state's paramount lien which merged in and became a part of the title, and this title is superior to all incumbrances or liens existing prior to the sale. . .

The pertinent provisions of the statute establishing the lien in favor of the state, counties, and municipalities for taxes assessed, attaching from and after October first of the tax year, are:

"These liens shall be superior to all other liens and shall exist in the order named and each of such liens may be enforced and foreclosed by sale for taxes as provided in this Act, or as other liens upon property are enforced." Gen.Acts 1935, p. 566, § 372, Code 1940, Tit. 51, § 884.

These provisions have existed and been brought forward in the laws on taxation through the years. Gen.Acts 1919, p. 449, § 416, Code 1907, § 2093.

The appellees' contentions, on the other hand are (we quote from the brief):

"1. That the lien of the City of Russellville for the enforcement of its street improvement assessment, and the lien of the state of Alabama for the collection of its taxes, are of equal rank and dignity; that neither has precedence over the other; that when the state of Alabama acquired title at tax sale, it acquired the tract of land in litigation subject to the assessment lien; and that when the complainant took title from the state of Alabama, she acquired the same subject to the judgment of assessment. That therefore, the city of Russellville has the right to enforce its lien, and complainant is not entitled to a decree quieting title.

"2. That if cross-complainant be mistaken in alternative number one, the complainant acquired by her conveyance from the state only the right to enforce against the lands in dispute the taxes and tax sale costs paid by her to the state of Alabama, together with the interest thereon. The cross-bill called upon the complainant to set forth and specify her tax liens and tax charges and interest, and offered to pay the same, if the court should find alternative number one not justified. The cross-bill specifically offered to do equity.

"3. That if alternative number one and number two should be both found incorrect, nevertheless the City of Russellville had a valid lien for street improvements upon the date of the tax sale; that it has never received from the purchaser at tax sale, or from anyone else, written notice of the sale for taxes; and that therefore the city has the statutory right to redeem from the tax sale, which right it desires to exercise. Again, the cross-bill called upon the com-

plainant to set forth and specify the charges necessary to effect a redemption, and offered to pay the same in the event that the previously mentioned alternatives should be decreed" against cross-complainants.

The statutes relied on by appellees to support their first contention, stated above, are, Code 1923, § 2199, 2202, and Act 270, approved November 8, 1932, Gen.Acts Extra Session 1932, p. 273, Code 1940, Tit. 37, §§ 538, 543.

Said Section 2199, is in the chapter providing for local improvements, provides: "At such meeting or any adjourned meeting the council shall proceed by order or resolution to fix the amount of the assessment against each lot or tract of land described and included in said assessment roll, and all such assessments, from the date of such order or resolution, shall be and constitute a lien on the respective lots or parcels of land upon which they are levied, superior to all other liens, *except those of the state or county for taxes.*" (Italics supplied.)

Said Section 2202, provides: "The enforcement by the state, county, city or town, of its lien for taxes on any lot upon which has been levied an assessment for any improvement authorized by this article, shall not operate to discharge, or in any manner affect the lien of the municipality for said assessment, *but a purchaser* at a tax sale by the state, county, city, or town of any lots or parcel of lands upon which an assessment has been levied, shall take the same subject to such assessment." (Italics supplied.)

Said act, the constitutional enactment of which is here raised in supplemental argument, provides: "All liens for public improvements which cities and towns in this State now have or may hereafter acquire under the general laws of this State shall continue until same are paid or satisfied in full." Gen.Acts Extra Session 1932, p. 273.

The question presented is not without difficulty. As before stated, the appellees in their answer and cross-bill concede that when the state bid in the property at the sale for state and county taxes it acquired title to the property, and has conveyed the title to the complainant, appellant here.

The contention is that in view of Code 1923, § 2202, she took the title incumbered with the lien of the City of Russellville for local improvements.

"It is held in most jurisdictions that the title conveyed by a sale for nonpayment of taxes is not merely the title of the person who had been assessed for the taxes and had neglected to pay them, but a new and paramount title to the land in fee simple absolute created by an independent grant from the sovereign and free from all equities and incumbrances existing prior to the sale upon the title of the previous owner. Under this view the sale extinguishes all prior incumbrances on the land or interests in it, though held by persons who were not liable for the tax or in default for not paying it, such as the lien of pre-existing mortgages, and judgments, landlords' liens, and inchoate right of dower." 26 R.C.L. 401, § 360; 61 C.J. 1290, § 1795; 61 C.J. p. 1307, § 1828; Jones v. Randle, 68 Ala. 258, 259, 267; Randle, Adm'r v. Boyd, 73 Ala. 282, 287.

This is the principle recognized in Driggers v. Cassady, 71 Ala. 529, 534, where it was observed: "The alienation of the land by the owner, Hargrove, although made prior to the date of sale, could not affect the lien of the State for delinquent taxes. The sale to Oates, made in October, 1878, *was after this lien had accrued,* which, in point of time, is fixed by statute to be the first of January of the year for which the taxes were assessed.—Code, § 375. Such a lien overrides any title acquired by purchasers, whether with or without notice, and in however good faith it may have been made, and for whatever value. It follows the land in the hands of the vendee, all persons being chargeable with a knowledge of its existence. If any other rule were allowed to prevail, the State might be subjected to intolerable embarrassments in the prompt collection of its revenues, effected through the fraud and artifices of tax delinquents, making sales of their effects so as to evade the payment of their honest taxes."

"Whether the purchaser at a sale of land for taxes acquires a new and original title or a derivative title depends upon applicable statutory provisions." 61 C.J. 1307, 1308, § 1828; Gunter v. Townsend et al., 202 Ala. 160, 79 So. 644.

So, also, whether the state acquires a higher title, when the property is bid in by the Judge of Probate for the state for like purchases at the sale, also depends upon the legislative intent expressed or necessarily implied in respect to such purchase. 61 C.J. 1306, 1307, § 1827.

█ The authorities are, generally, to the effect that assessment liens arising under statutes authorizing public improvements of streets "are subject to any and all liens or claims whatsoever which the state might have against the property, including liens of the state for taxes, unless the case falls within a statute placing assessment liens and state tax liens upon a parity." 44 C.J. 806, § 3416.

██ Ordinarily, as we judicially know, bidders at tax sales are volunteers seeking to acquire property for less than its value, and it is permissible for lien holders to purchase at such sale and protect their interests, or they may pay the taxes and acquire the right to enforce the state lien. Such lien holders may redeem from such tax sale and thus protect their rights or interests in the property.

█ The state on the other hand is a purchaser ex necessitate. The statute provides: "If no person shall bid for any real estate offered at such sale an amount sufficient to pay the sum specified in the decree of sale, and the costs and expenses subsequently accruing, the Judge of Probate shall bid in such real estate for the State at a price not exceeding the sum specified in such decree and such subsequently accruing cost and expenses." Gen.Acts 1935, p. 356, 357, § 230, Code 1940, Tit. 51, § 265.

The effect of the purchase by the state, unless otherwise provided withdraws the property from further taxation, until redeemed or sold by the state, Gen.Acts 1935, p. 357, § 232, Code 1940, Tit. 51, § 267; and the state is entitled to the possession of the lands immediately upon delivery of the certificate of purchase, by the Judge of Probate, and may recover the same in an action of ejectment. Gen.Acts 1935, p. 363, § 251, as amended, Code 1940, Tit. 51, § 286.

In short, title to the property vests in the state in virtue of the purchase, without the necessity of executing a deed, while other purchasers do not acquire title until after the expiration of the redemption period, three years, and the execution of a deed by the Judge of Probate upon surrender of the certificate of purchase. The title of such other purchaser is derivative. The statute provides: "And such deed shall convey to and vest in the grantee all the right, title, interest and estate of the person whose duty it was to pay the taxes on such real estate, and the lien and claim of the State and County thereto, but it shall not convey the right, title or interest of any reversioner or remainderman therein." Acts 1935, p. 360, § 241, Code 1940, Tit. 51, § 276; Gunter v. Townsend, supra.

From these several statutory provisions, the last legislative expression on the subject, the intent is clear to give the state a paramount lien for taxes due, and when the state becomes the purchaser to merge the lien in the title and confer on the state a title in fee superior to all incumbrances on the property. The State, in such circumstances, is not "a purchaser at a tax sale" within the meaning of § 2202 of the Code 1923, Code 1940, Tit. 37, § 543. Any other interpretation would render the statute, Gen.Acts 1935, p. 566, § 372, Code 1940, Tit. 51, § 884, which gives the state a lien "superior to all other liens," wholly impotent and meaningless, and would result in placing upon the state the burden of discharging other liens and incumbrances as a prerequisite to realizing and collecting its revenues. Such embarrassment was not contemplated nor intended. Acts 1935, p. 376, § 285.

█ The City of Russellville had, under the provisions of § 268 of the Revenue Act 1935, p. 368; Code 1940, Tit. 51, § 303, the right to redeem at any time before the title passed out of the state.

It also insists that it was entitled to notice of the purchase by the state and that it was entitled to redeem within a year thereafter. Acts 1935, p. 1112, § 251, as amended. Said amended section provides:

"If the mortgage or other instrument creating a lien under which a party seeks to redeem *is duly recorded* at the time of said tax sale, the said party shall, in addition to the time in this act specified, have the right to redeem said real estate sold, or any portion thereof covered by his mortgage or lien, at any time within one year from the date of written notice from the purchaser of his purchase of said lands at tax sale, served upon such party, and notice served upon either the original mortgagee or lien holder or their transferee of record, or their heirs, personal representatives or assigns, shall be sufficient notice. Such notice shall be given by registered mail, return receipt demanded, addressed to the last known address of the mortgagee or lien holder." Acts 1935, p. 1112, § 251, Code 1940, Tit. 51, § 286. (Italics supplied.)

█ The cross-bill does not state the date of the tax sale nor does it allege that

the lien of the City of Russellville was a "lien holder of record." These provisions are dealing with liens recorded in the office of the Judge of Probate of the county in which the lands were situated, and they do not contemplate that a purchaser or subpurchaser shall search elsewhere for such "recorded liens."

The foregoing is sufficient, we think, to indicate that the demurrer to the cross-bill was well taken and the court erred in overruling same.

Reversed and remanded.

GARDNER, C. J., THOMAS and FOSTER, JJ., concur.

## On Rehearing.

BOULDIN, Justice.

Code of 1928, Section 2202, Code 1940, Tit. 37, § 543, reads:

"§ 2202. (1387) Tax liens; relation of and effect of as to assessments.—The enforcement by the state, county, city or town of its lien for taxes on any lot upon which has been levied an assessment for any improvement authorized by this article, shall not operate to discharge, or in any manner affect the lien of the municipality for said assessment, but any purchaser at any tax sale by the State, county, city or town of any lots or parcels of land upon which an assessment has been levied shall take same subject to such assessment. (1927, p. 766.)"

This statute dates back to the Act approved March 5, 1907, dealing entirely with public improvements, including street improvements, the assessment of abutting properties for the costs thereof not exceeding the special benefits derived from the improvements, creating liens on the property for such assessments, and providing for the protection and enforcement of such liens, &c. Acts of 1907, 295, § 11, p. 303.

On the next day after approval of said Act the same Legislature appointed a joint recess committee to prepare a general municipal bill or bills. Acts of 1907, p. 356.

Later in the same session the Legislature enacted a comprehensive statute: "To provide for the organization, incorporation, government and regulation of cities and towns and to define the rights, powers, duties, jurisdiction and authority of such cities and towns and of the officers thereof."

This statute was approved August 13, 1907, Acts of 1907, p. 790.

Section 11 of the Act of March 5 became section 132 of the Act of August 13 without change.

In codifying the Act of August 13 in the Code of 1907, section 132 of the statute was divided into several sections, which appear without change in the Code of 1923, as §§ 2196 (1381), 2197 (1382), 2198 (1383), 2199 (1384), 2200 (1385), 2201 (1386), 2202 (1387), 2203 (1388). See Code 1940, Tit. 37, §§ 535–538, 541–544.

The Act of September 10, 1927, Acts 1927, p. 753, therein designated "The Municipal Public Improvement Act," while purporting to amend the above sections of Code of 1923, simply re-enacts them without change, except by adding a provision to section 2199, not material here.

It thus appears that section 2202 was twice considered by the Legislature of 1907, and has been twice re-enacted without change, and has always appeared in statutes dealing with Municipal Affairs, not in General Revenue Bills.

The bill passed and approved March 5, 1907, was introduced by Honorable J. M. Foster, of Tuscaloosa. The statute has been in force for a third of a century. This court is now called upon to construe it for the first time. This argues that section 2202 has not provoked litigation.

A careful study of section 2202 in its setting, discloses, in my opinion, that the wording of the section was carefully thought out, and every clause is to be given effect in the light of the subject matter and the context. The statute declares the assessment lien subordinate to liens for State and County taxes; looks to the "enforcement" of the paramount liens by a sale of the property wherein the purchaser shall take the title and right of possession defined by law as against the owner.

But such enforcement proceedings: "Shall not operate to discharge, or in *any manner affect the lien* of the municipality for said assessment." (Italics supplied.) "But *any purchaser* at any tax sale" of city property on which an assessment lien exists "shall take same *subject* to such assessment." (Italics supplied.)

The result is that the paramount lien for state and county taxes is not foreclosed in the ordinary sense, cutting off all rights of the holder of the assessment liens other than a statutory right of redemption.

The purchaser steps into the shoes of the owner, acquires his right of possession, with the same right to pay off the assessment lien at his election. If he does not so elect, the holder of the assessment may foreclose the same. But, under statutory provisions running through all our laws, such purchaser acquires the liens of state and county, as defined by § 3123, Code of 1923. In foreclosing the assessment lien in equity against such purchaser, the complainant must offer to do equity, by satisfying the paramount liens the purchaser has removed.

To my thinking, this is the meaning of the statute, well expressed by its terms.

So construed, the statute, in my opinion, expresses the justice of the situation. Why?

The lien for local assessments is a form of tax, one authorized by the State itself, for a highly important public purpose; oftentimes for the protection of the public health, or for a system of streets related to the State Highway System.

It is a betterment tax, limited to the benefits to the property itself, with ample provisions of law to assure its confinement within such limit. It represents expenditure of local tax funds by the city in making the improvements, enhancing the value of the property to the amount of the assessment tax; or else funds of persons who have financed the improvement upon the faith of securities based upon such assessments.

The original act, in order to lighten the burden of such assessments, provided for payment by instalments, running a period of ten years. Bonds, or other securities are issued, payable from the proceeds of such assessments. In smaller cities bonds are issued on these assessments as sole security. Such bonds naturally run until these instalments become payable. Wise lawmakers were naturally concerned in making these assessments desirable security. Bonds may be held by far distant people.

It is contemplated the assessments will be paid as the instalments become due. Meantime, says section 2202, the holders of these assessment liens need not concern themselves with tax records growing out of enforcement of state and county tax liens.

If and when it becomes necessary to enforce their assessment liens, the holders thereof must look into the matter of paramount tax liens, and, if the property has passed to a purchaser under enforcement proceedings, his title and possession shall not be disturbed until the paramount liens are paid off.

When the state, has, by its own authorization led to betterments of property, represented by these assessments, is there justice in the state or its vendees, taking this unearned increment, at the expense of those whose money, on the invitation of the state, has created such increment in value?

But, it is said, while an individual purchaser at a tax sale takes subject to section 2202, a different rule applies to the state.

This argument proceeds on two grounds:

1. The general doctrine that a statute defining the right of persons does not apply to the state unless such intent clearly appears.

2. The state, after the statutory right of redemption expires, is invested with and passes to a purchaser from the state a complete title, Acts 1935, p. 376, § 285; while the deed from the Judge of Probate to an individual purchaser after time for redemption has expired, passes another and lesser title. Acts 1935, p. 360, § 241, Code 1940, Tit. 51, § 276.

In answer to both these propositions; we think such view is answered by section 2202 itself. As before argued, this section declares the *enforcement* of these paramount liens shall in no *manner affect* these assessment liens. The sale at the court house, and further enforcement proceedings, does not effect a foreclosure of a superior lien in the ordinary sense as against the assessment lien holder. He is not stripped of all rights, save the statutory right of redemption. The purchaser acquiring a deed from the Judge of Probate, or a deed from the State, is given the status of the owner prior to enforcement proceedings, with the additional rights of an assignee of the paramount liens which he has removed.

An Act, original in form, approved November 8, 1932, reads:

"All liens for public improvements which cities and towns in this state now have or may hereafter acquire under the general laws of this state shall continue until same are paid or satisfied in full." Acts 1932, p. 273, Code 1940, Tit. 37, § 543.

This Act, it seems, is to protect the lien of local assessments against the running

of statutes of limitation, &c., as well as a further assurance that the lien shall continue in force until paid. Lamar v. Rivers et al., 235 Ala. 130, 178 So. 16.

Sections 241 and 285 of the Revenue Bill of 1935, supra, were not new. The Revenue Bill of 1919, contained like provisions. Acts of 1919, p. 360, § 266, and p. 372, § 306.

These statutes, embodied in the General Revenue Laws, have run concurrently with section 2202, dealing specially with public improvement by municipalities and local assessment on abutting property limited to benefits. Both statutes have been re-enacted. There is nothing in § 285, supra, defining "owner" as therein used. Certainly nothing to indicate a purpose to deal with local assessment liens. It is elementary that, if there be an apparent conflict between general laws, and those dealing with a specific subject, the general law yields to the special. Both are given effect, so as not to conflict.

Moreover, § 285, supra, is to be construed in connection with other provisions of the same statute. We have held the right of a reversioner or remainderman is not cut off because the state has purchased at a tax sale. State v. Clarke, 240 Ala. 362, 199 So. 543, 544; Gunter v. Townsend et al., 202 Ala. 160, 79 So. 644; Note 75 A.L.R. 416, 420.

The notion that a purchaser from the state under § 285, supra, takes a fee simple title necessarily runs counter to this holding. Surely the protection of liens created by authority of the state, and defined by the laws of its authorization is entitled to the protection such laws provide.

If § 2202 means what it says in declaring the enforcement proceedings shall in no manner affect the assessment lien, the question of the nature of the title taken by the state, as a purchaser, or the title of a purchaser from the state, after the statutory right of redemption is lost, is immaterial. As to the holder of assessment liens the statutory right of redemption has never come into being, as we have tried to demonstrate.

The general rule that statutes dealing with persons are not to be construed to include the state unless clearly so intended applies when such construction would infringe upon the sovereignty or prerogative of the state, or runs counter to the settled public policy of the state.

United States v. Knight, 14 Pet. 301, 10 L. Ed. 465; Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314.

In the levy and collection of the state's revenue no one questions the state is acting within its sovereign capacity, an essential function of the state.

In devising a system of taxation for general and special purposes, including enforcement legislation, the state is in the exercise of this sovereign power. The real inquiry is what has the state done in the premises.

It is not the policy of the state to become a landowner through its tax laws; its aim is to collect its revenues, leave the ownership of lands in the citizen, and on the tax rolls. The purchase of lands by the state at tax sales is purely statutory, to be exercised as a last resort; the price at which it is bid off, being limited to the taxes and lawful expenses.

Section 2202 defines the policy of the state with regard to liens for local assessments for public improvements. We repeat the essence of this statute is to prevent enforcement proceedings endangering local assessments. Who becomes the purchaser is not of consequence. The latter clause dealing with the title or interest acquired by the purchaser is to make more emphatic this policy.

The statute would fail of its purpose if the holder of the assessment lien must keep check on who is the purchaser at the tax sale. Indeed, the policy of the state might be readily evaded if the state by its purchase takes a title cutting off these local assessments. The prospective bidder at a tax sale, knowing of a local assessment on the property, could keep hands off, let the state bid off the property, then purchase from the state after time for statutory redemption had expired, and so acquire a title free of the local assessment, which he would not obtain by a deed from the Judge of Probate after time for statutory redemption expired.

GARDNER, C. J., THOMAS and LIVINGSTON, JJ., concur in the foregoing opinion.

BROWN and FOSTER, JJ., dissent.

The rehearing is granted, reversal set aside and decree of court below affirmed.

504

BROWN, Justice (dissenting).

The appellee in the brief filed to support the application for rehearing states:

"The residence property of Mr. W. L. Chenault, an attorney of this court, constitutes a magnificent rural estate in the City of Russellville, Alabama, located in a populous urban residential area. The same was assessed for street improvements by the City Council in a large amount in the year 1927.

"In two successive trials of the appeal in the Law & Equity Court, the amount of the assessment was fixed at $4,000.00 by two different Judges of the Law & Equity Court, an amount radically less than the original assessment. The second judgment fixing the assessment was affirmed on the second appeal to the Supreme Court.

"Thereafter, the assessment not having been paid and the property owner being in clear default, the city sued out a writ of venditioni exponas for the sale of the property, as authorized in the judgment entry. Pending the proceedings in the Law & Equity Court, Mr. Chenault permitted the property to sell for unpaid state and county taxes. At the tax sale the property was struck off to the State of Alabama. *Shortly after the expiration of three years from the date of the sale, Mr. Chenault obtained a conveyance of the tax title from the state, naming the grantee and purchaser as Miss Lucy Downing, the appellant here. Miss Downing is Mr. Chenault's sister-in-law, and a member of his family.*" (Italics supplied.)

That is not the case presented on this record, as clearly appears from the foregoing opinion dealing with the case presented by the cross-bill, which admits that the original complainant, Downing, acquired and holds the legal title to the property, acquired through her purchase and conveyance from the state. We are confined to the case presented by the cross-bill, the averments of which are construed most strongly against the pleader. Jones et al. v. Jones et al., 230 Ala. 465, 162 So. 113.

The foregoing opinion is denounced as contrary to the settled law and policy of the state in the exercise of its taxing power.

Section 3126 of the Code of 1923, defined the character and quality of the title passing to the state to lands bid in by the Judge of Probate at tax sale for the state. "All the right, title, and interest of the owner of such real estate, and of the person whose duty it was to pay the taxes thereon in and to such real estate, shall be transferred to, and absolutely vested in the state." The deed executed by the Judge of Probate to an individual purchaser, the statute provides, "shall convey to and vest in the grantee *all the right, title, interest, and estate of the person whose duty it was to pay the taxes on such real estate,* and the lien and claim of the State and county thereto, but it shall not convey the right, title, or interest of any reversioner or remainderman therein." Acts 1919, p. 360, § 266; see Acts 1935, p. 360, § 241, Code 1940, Tit. 51, § 276. (Italics supplied.)

That statute, not an amendment to the Code, but as a part of the General Revenue Act, was embodied in the Acts of 1935, as § 285, in the following language: "The right to redeem any real estate bid in for the State shall be forfeited unless such real estate is redeemed within the time prescribed by this Act, and if not redeemed within that time, all the right, title and interest of the *owner of such real estate, and of the person whose duty it was to pay the taxes thereon, in and to such real estate, shall be transferred to and absolutely vested in the State.*" Acts 1919, p. 372, § 306; Acts 1935, p. 376, § 285. (Italics supplied.)

We stop to inquire, did the Legislature in framing these statutes, one dealing with the character and quality of title conveyed to individual purchasers, and the other with the quality and character of the title passing to the state to lands bid in for the state by the Probate Judge, carelessly and without thought and purpose, use different language to express the same thought or was the language incorporated in the last quoted statute used deliberately with the intent to vest in the state a higher quality of title than that conferred on individual purchasers? We are not willing to impute to the Legislature either gross ignorance or gross negligence in the phrasing of this legislation. We must assume that they were familiar with the history of such legislation and its interpretation by this court.

In Dyer v. Branch Bank at Mobile, 14 Ala. 622, it was ruled that: "If one in possession of real property is liable to pay the taxes for that year, his interest

only can be sold for the tax. By a purchase at a tax sale, the purchaser acquires the interest of the party, whose property is sold, and not the independent, or superior, or ultimate title of a third person."

That doctrine was repudiated in Jones v. Randle, 68 Ala. 258, 267. The court speaking by Mr. Justice Stone, observed: "In Dyer v. Branch Bank at Mobile, 14 Ala. 622, is a statement by the court— probably a dictum—that a sale of lands assessed to a person, whose duty it was to pay the taxes for that year, the purchaser acquired only the interest of such person. We do not think this is a proper construction of our present law. On the contrary, we hold that whenever lands are properly sold and conveyed for unpaid taxes imposed on the lands themselves, the purchaser acquires the fee.— Doe v. Hearick, 14 Ind. 242; Bur. on Tax, § 122."

That opinion, the doctrine of which is now denounced by the appellee as revolutionary, was concurred in by Brickell, C. J., and Somerville, J., and was reaffirmed in Randle, Adm'r v. Boyd, 73 Ala. 282; Driggers v. Cassady, 71 Ala. 529, and was restated in Thorington v. City Council of Montgomery, 88 Ala. 548, 553, 7 So. 363, 365, by the court speaking through Stone, Chief Justice, in the following language: "A sale of land for taxes, under our statutes as they then stood [1884], is a sale of the fee, and not of the tax-payer's interest only. It is thus that a failure to pay taxes by a termor or life-tenant, or by some one for him, may result in the loss of the entire estate. The tax assessed is a charge and lien on the land itself, as well as a legal liability resting on the tax-payer. Jones v. Randle, 68 Ala. 258; Parker v. Baxter, 2 Gray [Mass.] 185; Winter v. City Council, 79 Ala. 481."

It was noted in that opinion that the statute under which the sale was made in that case had been amended by Code of 1886, § 592.

Jones v. Randle, 68 Ala. 258, was decided at the December term, 1880, and the Legislature convening in 1884-1885, enacted the Revenue Law which was approved February 17, 1885. That act, as stated by Chief Justice Stone in Thorington v. City Council of Montgomery, 88 Ala. 548, 7 So. 363, took in to account the

decision in Jones v. Randle, and changed the law. Section 113 of that act provided:

"Immediately after the expiration of the term of two years and six months from the date of the sale of any real property for taxes, the probate judge then in office shall make out a deed for each lot or parcel of real property sold *to individuals* and remaining unredeemed, and deliver the same to the purchaser upon the return of the certificate of purchase and the payment of one dollar for the deed; but any number of parcels of real property bought by one person may be included in one deed, as may be desired by the purchaser. Which deed shall convey to the said purchaser all the right, title and interest *of the person or persons whose duty it was to pay the tax on said land,* and shall not convey the right, title or interest of any reversioner or remainderman in said land." Acts 1884-1885, p. 52, § 113. (Italics supplied.)

Said Act in § 125, provided: "The right of redemption shall be forfeited to all property bid in by the State and not redeemed within two years and six months from the date of sale of such property for taxes, and thenceforth all right, title and interest *of the person whose duty it was to pay such taxes,* in and to such real property, shall be considered as transferred to and vested absolutely in the State of Alabama." Acts 1884-1885, p. 64. (Italics supplied.)

Honorable John P. Tillman, a lawyer of profound learning and great ability was the Code Commissioner who prepared and supervised the publication of the Code of 1886, and was familiar with the decision of the Supreme Court in Jones v. Randle, supra, which he cited under § 592 of said Code. As brought forward in that Code, the section dealing with the character of title received by individual purchasers at tax sale, reads as follows:

"592. *Deed to purchaser.*—After the expiration of two years and six months from the date of the sale of any real estate for taxes, the judge of probate then in office must execute and deliver to *each* purchaser, or person to whom the certificate of purchase has been assigned, upon the return of the certificate *and payment of a fee of one dollar* to the judge of probate, a deed to the real estate purchased, as described in the certificate, including therein, *if desired by the purchaser,* any number of parcels or lots purchased by

him at such sale; and such deed, when properly acknowledged and recorded, shall convey to, and vest in the grantee all the right, title, interest and estate of the *former owner of such real estate,* and of the person whose duty it was to pay the taxes on such real estate, and the lien and claim of the state and county thereto; but it shall not convey the right, title, or interest of any reversioner or remainderman therein." (Italics supplied.)

Jones v. Randle, 68 Ala. 258, was cited in the annotation with Lassitter v. Lee, 68 Ala. 287.

The italicized portion of said section shows conclusively that it dealt with *individual purchasers,* and the Code Commissioner in rewriting that section of the act intended that it should convey the title of all owners, except reversioners and remaindermen.

Section 125 of the act, as carried into the Code of 1886, reads: "617. *Effect of failure to redeem lands bid in by state.*— The right to redeem any real estate bid in for the state shall be forfeited, unless such real estate is redeemed within the time prescribed in this chapter; and if not redeemed within that time, *all the right, title and interest of the owner of such real estate,* and of the person whose duty it was to pay the taxes thereon, in and to such real estate, *shall be transferred to, and absolutely vested in the state."* (No exceptions). (Italics supplied.)

Did Mr. Tillman realize the import of this language? Who can doubt it?

That is not all. Honorable W. L. Martin, another great lawyer, prepared the Code of 1896, and in bringing forward § 592 of the Code of 1886, he seemed to realize that the language of that section was somewhat inconsistent in including "All the right, title, interest and estate of the former owner," and yet excepting the rights of reversioners and remaindermen, and dropped the words *"all the right, title, interest and estate of the former owner,"* leaving the deed only to "vest in the grantee *all the right, title, interest and estate of the person whose duty it was to pay the taxes on such real estate, and the lien and claim of the state and county thereto";* and providing that such deed should not apply to the title, interest or right, of "any reversioner or remainderman." Code 1896, § 4074. (Italics supplied.)

But in bringing forward § 617 of the Code of 1886, it speaks in the exact language as it did in that Code. We stop to inquire, did Martin appreciate the effect and purpose of said section, which carried the title in black lettering *"Effect of failure to redeem lands bid in by state"?* Code 1896, § 4105.

The Legislature has persistently brought forward these two statutes in the several revenue acts since that date in the exact language of §§ 4074 and 4105, respectively of the Code of 1896, and as they appear in the current revenue law under which the lands in this case were sold.

The remarkable thing about this, the last mentioned statute, it doesn't seem to have been cited in any decided case and has been wholly overlooked. If ignoring a statute by the courts that has existed for fifty-seven years, though the Legislature has persisted in repeatedly rewriting it, has the effect to annul it, then said statute has lost its force. I can not subscribe to that doctrine.

So, much in answer to appellee's statement that the opinion first above promulgated is revolutionary.

The question involved in this proceeding, and we limit our decision to this question, is whether or not the foreclosure of the state's superior lien for state and county taxes cut off the inchoate lien of the City of Russellville, which was not perfected until after such foreclosure. City of Huntsville v. Pulley, 187 Ala. 367, 65 So. 405; Hamrick v. Town of Albertville, 219 Ala. 465, 122 So. 448.

As before stated, the validity and regularity of the tax sale proceeding here involved are not questioned, and the conclusion is inescapable that the effect of the sale was to foreclose the state's paramount lien on the land, and cut off the inchoate lien of the City of Russellville, and after the expiration of the time for redemption, the title becomes, as to it, indefeasible in the state, and that title was conveyed to the complainant. Griffin Lumber Co. v. Neill et al., 240 Ala. 573, 200 So. 415.

"As a general rule of statutory construction, without any express legislative declaration, general words in a statute do not apply to the state, nor affect its rights, unless an intention to the contrary appears." State ex rel. Smith, Atty. Gen. v. McCord, 203 Ala. 347, 83 So. 71.

There is no express provision making the provisos of § 2202 of the Code of 1923, Code 1940, Tit. 37, § 543, applicable to the state, nor is there a necessary implication that it was the intent of the lawmaker to make the state's right to collect its revenue subordinate to local improvement liens raised by § 2199 of the Code, Code 1940, Tit. 37, § 538.

The prevailing opinion on rehearing ignores the provision of the statute fixing the limitation for redemption from tax sale, ignores the provision of § 285 of the Revenue Act cutting off such right and defining the character of title acquired by the state, and subordinates the state's rights to the rights of cities and towns. I, therefore, respectfully dissent on the point that § 2202, applies to the state and that the City of Russellville has the right to redeem after the expiration of the three years fixed by the statute.

FOSTER, J., concurs in the foregoing opinion.