JONES, Justice.
This case requires us to examine title and lien priority conflicts arising from the municipal sale of property to satisfy state and county tax and municipal assessment liens. Plaintiffs, deriving their interest in the property from a 1974 sewer assessment foreclosure sale, brought a quiet title action against Defendants, who derived their interest from a 1971 tax foreclosure sale. The trial court awarded the property to Defendants, (tax sale purchaser) subject to Plaintiffs’ assessment lien, plus accrued interest. Plaintiffs appeal, asserting the trial court misapplied the applicable law and violated Code 1975, § 11-48-55, by allowing Defendants to redeem the property six years beyond the municipal assessment sale.
The dispositive issues are: 1) whether Plaintiffs are entitled to the protection of the recording statutes as purchasers for value without notice of the tax sale; 2) whether the purchaser at a tax sale of property then subject to a municipal assessment takes subject to the lien for that assessment; and 3) whether the failure of the tax sale purchaser (Defendant Maggie Rabren) to redeem the property by paying the municipal assessment within the period prescribed by statute cut off the Defendants’ right to redeem. We resolve these issues in favor of Plaintiffs, reverse the judgment of the trial court, and remand with directions to enter an order consistent with this opinion.
FACTS
Maggie Rabren purchased property located in Foley, Alabama (hereinafter referred to as Lot 10), for $21.96 at a tax sale in 1971 for overdue state and county taxes. She received a certificate of purchase from the tax collector, and thereafter paid taxes on the property. At the time of this sale, Lot 10 was subject to an unpaid sewer assessment of $704.86.
In February, 1974, E.F. Sanders bought Lot 10 for $704.86 in a sale conducted to satisfy the unpaid sewer assessment. In April, 1974, Sanders recorded his deed of sale and sold the property to Mary Williams *507 and Nancy Williams for $775.50, issuing a quitclaim deed. In June, 1974, the probate court issued a tax deed to Rabren which was immediately recorded. The documents of record in the probate office revealed no interest of Rabren in Lot 10 prior to this time.
In August, 1975, the Williamses recorded their deed, had the property assessed, and began to pay property taxes on Lot 10. In 1978, Rabren sold Lot 10 to Eloise Knight. Knight asked Sammy Green to cut some trees on the lot, and these actions led to the discovery of the title conflict. The Wil-liamses brought suit on February 10, 1981, to quiet title of Lot 10.
ISSUE I

Are Plaintiffs entitled to the protection of the recording statutes as purchasers for value without notice of the tax sale?

Plaintiffs contend they are persons entitled to protection under Code 1975, § 35-4-90. This statute provides that all conveyances of real property are inoperative and void as to purchasers for valuable consideration without notice, unless the conveyance has been recorded before the right of such purchasers accrues.
Plaintiffs paid valuable consideration for their deed to Lot 10; therefore, the focal point of analysis is whether Plaintiffs had actual, constructive, or inquiry notice of the prior tax sale. The undisputed evidence showed Plaintiffs had no actual notice of any other interest in Lot 10.
Defendants argue, however, that payment of taxes by Rabren should have given Plaintiffs notice necessitating further inquiry. A similar argument proved unsuccessful in Lawton v. Stillwell, 275 Ala. 358, 155 So.2d 311 (1963). In Lawton, a quiet title action, Lawton, who received her deed before, but recorded it after, Stillwell purchased and recorded, contended Stillwell was not a bona fide purchaser for value without notice because she assessed the property for taxes and paid those taxes for several years prior to Stillwell’s purchase. The Court stated:
“We are cited to no authority which holds that her assessment of the property for taxation can operate to impute to Still-well any notice of her claim to the property. In the absence of such authority, there is nothing to sustain her position that J.D. Stillwell is not a bona fide purchaser.” 275 Ala. at 360, 155 So.2d at 313.
We likewise hold that Rabren’s assessment and payment of taxes was insufficient to put Plaintiffs on inquiry notice. When the Williamses purchased the property, Lot 10 contained no buildings, dwellings, or other structures sufficient to raise an inquiry duty. Evidence showed the lot was overgrown and appeared to be abandoned. Therefore, we conclude that no physical circumstances gave inquiry notice to Plaintiffs.
Rabren recorded after Sanders and the Williamses; hence, neither Sanders nor the Williamses had constructive notice of Ra-bren’s claim or interest or the contents of the subsequently recorded tax deed. Tennessee Coal, Iron, and Railroad Co. v. Gardner, 131 Ala. 599, 32 So. 622 (1902). Because Plaintiffs had no actual, inquiry, or constructive notice, they are entitled to the protection afforded by our recording statutes to bona fide purchasers for value without notice of the prior conveyance.
ISSUE II

Does a purchaser at a tax sale of property then subject to a municipal assessment take subject to the lien for that assessment?

We must determine the effect of the municipal assessment on Rabren’s 1971 certificate of purchase and on her 1974 tax deed. This Court considered the relationship and effect of tax liens to assessments in Downing v. City of Russellville, 241 Ala. 494, 3 So.2d 34 (1941). The Court in Downing interpreted Ala.Code 1940, Tit. 37, § 543 (now § 11-48-34):
“§ 11-48-34. Effect of enforcement of tax liens upon property upon assessment liens; duration of assessment liens.
*508 “(a) The enforcement by the state, county, city or town of its lien for taxes on any lot upon which has been levied an assessment for any improvement authorized by this article shall not operate to discharge or in any manner affect the lien of the municipality for the assessment, but any purchaser at any tax sale by the state, county, city or town of any lots or parcels of land upon which an assessment has been levied shall take them subject to such assessment.
“(b) All liens for public improvements which cities and towns in this state now have or may hereafter acquire under the general laws of this state shall continue until they are paid or extinguished or until the expiration of 20 years from the date of default in payment of the assessment or from the date when there was a due recognition of the indebtedness after default, after which time the enforcement of the lien shall be barred and the indebtedness conclusively presumed to have been paid.”
The Court found that assessment liens are subordinate to tax liens;[1] therefore, the paramount liens can be enforced by the sale of the property subject to an assessment lien. The buyer at the tax sale takes title encumbered by local improvement liens levied by a municipality. In the words of Downing:
“The [tax sale] purchaser steps into the shoes of the owner, acquires his right of possession, with the same right to pay off the assessment lien at his election. If he does not so elect, the holder of the assessment may foreclose the same.... In foreclosing the assessment lien in equity against such purchaser, the complainant must offer to do equity, by satisfying the paramount liens the purchaser has removed.” 241 Ala. at 502.
Where real property is encumbered by both tax and assessment liens, the property may be sold to satisfy the tax lien, even though an outstanding assessment lien exists, because of the statutorily mandated priority of tax liens. The tax sale purchaser, however, takes the property subject to the assessment lien. If the tax sale purchaser fails to extinguish the assessment lien, the property can be sold by the assessment lienholder for satisfaction of that lien. The tax sale purchaser thereafter may redeem the property according to the redemption statute. If redemption does not occur, the assessment sale purchaser must repay the tax sale purchaser for the value received by removal of the prior tax encumbrance. Downing, supra.
In the instant case, the City of Foley levied the assessments in 1958 and 1963; the twenty-year statute of limitations had not run before the assessment foreclosure sale. Therefore, Rabren took subject to the assessment lien held by the City of Foley when she bought Lot 10 at the tax sale; and the subsequent issuance of a tax deed neither extinguished the assessment lien, nor impugned the validity of the assessment. Pursuant to general principles of equity, however, the purchaser at such a sale, or subsequent grantees, must repay the tax sale purchaser, or subsequent grantees, for the benefit conferred by removal of the prior tax lien.
ISSUE III

Did failure to redeem the property within the time prescribed by the redemption statute cut off Defendants’ right to redeem?

A valid assessment, followed by a valid foreclosure sale enforcing that assessment, allows the city to pass full title to the assessed property, subject to the right of redemption provided by law. Hill v. Beneditto, 253 Ala. 229, 43 So.2d 819 (1950); Messer v. City of Birmingham, 243 Ala. 520, 10 So.2d 760 (1942). Upon issuance of the tax deed, Rabren succeeded to all right, title, and interest of the former owner.
After the city’s assessment sale of Lot 10, Rabren, as owner of the property subject to the municipal assessment could only assert her right or interest to the property pursuant to the redemption statute. § 11-48-54 reads:
*509 “Any real property heretofore or hereafter sold for the satisfaction of a local improvement assessment lien imposed thereon by the governing body of a municipality may be redeemed by the former owner, or his assigns, or other person authorized to redeem property sold for taxes by the state of Alabama within two years from the date of such sale by paying to the purchaser at such sale or to any person deraigning title under such purchaser or to the city or town treasurer for such purchaser or person deraigning title under such purchaser the amount of the purchase price for which the property was sold at such sale plus an amount equal to interest on such purchase price from the date of such sale to the date of redemption at the rate of six percent per annum plus a fee of $2.00 to cover the expense of a conveyance. If the redemption is made from the municipality, the payment may be made upon such terms including installment payments as the governing body of the municipality may approve.”
Under this statute, Rabren or her assigns could have redeemed the property within two years of the sale, from E.F. Sanders, grantee of the City of Foley, or subsequently from the Williamses. This two-year period of redemption could have been extended under § 11 — 48-55, but that section explicitly states the period for redemption should never exceed six years from the sale date.[2]
Defendants’ failure to assert their right of redemption prior to the expiration of the maximum six-year statutory period bars any claim on the property. A right of redemption is granted by statute, and that right must be timely asserted in the statutorily prescribed manner. Gunter v. Smith, 257 Ala. 640, 60 So.2d 611 (1952); Throckmorton v. City of Tuscumbia, 247 Ala. 203, 23 So.2d 550 (1945). The judgment appealed from is due to be, and hereby is, reversed. We remand this cause to the trial court with directions to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.

. State and county tax liens have statutorily mandated priority. Code 1975, § ll-48-29(a).

. The statute reads in its entirety:
“§ 11-48-55. Extension of redemption period.
“The fixed two year period of redemption allowed by section 11-48-54 for the redemption of any property heretofore or hereafter sold for the satisfaction of any assessment lien may be extended to a date 60 days after the date of the certificate of warning to redeem provided for in section 11-48-56, but in no event for a longer period than six years from the date of such sale.”