(95 South. 546)

### Ex parte HELM.  (6 Div. 940.)

(Supreme Court of Alabama.  Dec. 18, 1919.)

**1. Covenants ⬦⟹42(2) — Accrued and unpaid taxes are "incumbrances."**

Accrued and unpaid taxes are "incumbrances" on lands within a covenant warranting the title to be free from incumbrance.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Incumbrance (On Title).]

**2. Municipal corporations ⬦⟹980(3) — Certificate of city or town clerk as to taxes due is condition precedent to sale.**

A certificate of the city or town clerk as to delinquent taxes, required by Code 1907, § 1319, is a condition precedent to the jurisdiction of the register in chancery to give the prescribed notice to the owners of the property, and compliance therewith is necessary in order that a sale may divest the legal title out of the owner and invest the same in the purchasers under sections 1320, 1321.

**3. Covenants ⬦⟹119—Proceedings insufficient to sustain sale of property are admissible to show transfer of tax lien.**

In an action for breach of covenant, it was not error to admit in evidence documents evidencing the several stages of the effort in chancery to sell lots for delinquent taxes, even though it were shown on the face thereof that the sale was ineffective to pass title to the property, since it was evidence of the transfer of the city's lien for taxes to the purchaser who might enforce the lien under Code 1907, § 1326.

**4. Municipal corporations ⬦⟹980(9)—Lien of purchaser at invalid sale does not include court costs nor costs of publication.**

The lien of a city for taxes, which is transferred to the purchaser at a sale which is ineffective to give him title to the property, does not embrace the costs incurred in the chancery court nor the cost of publication of the notice.

Certiorari to Court of Appeals.

Petition of J. B. Helm for certiorari to the Court of Appeals to review and revise the judgment and decision of said court in the case of Helm v. Griffith, 17 Ala. App. 122, 82 South. 570.  Writ awarded, and cause remanded.

See, also, 95 South. 548, post, p. 158, 95 South. 551.

Horace C. Wilkinson, of Birmingham, for petitioner.

The list in this case was not certified by the city clerk, and was therefore void.  Code 1907, §§ 1319, 1320, 1321; 190 Ala. 569, 67 South. 381; 70 Ark. 326, 67 South. 1014.

Harsh, Harsh & Harsh and W. J. Slaughter, all of Birmingham, opposed.

Courts of general jurisdiction, when they have delivered a judgment upon a matter over which they have jurisdiction, cannot be attacked collaterally in another independent proceeding.  182 Ala. 378, 62 South. 706; 173 Ala. 332, 56 South. 123; 26 Ala. 639; 27 Ala. 633; 124 Ala. 238, 27 South. 297; 62 Ala. 262.

THOMAS, J.  The suit was to recover damages for breach of covenant warranting the title to real estate to be free from incumbrances.

The deed in question, of date May 30, 1910, described the property as "situated in the town of Woodlawn."  On January 1, 1910, said town was merged into the city of Birmingham, and under the terms of the act of merger, as well as under the appropriate provisions of the Political Code, §§ 1152–1162, the city of Birmingham was vested with the right of enforcing all liens for taxes and assessments which, except for the merger, might have been enforced by the town of Woodlawn.

[1] That accrued and unpaid taxes are incumbrances on lands is indicated by the comprehensive definition of incumbrances contained in Brodie v. New Eng. Mortg. Sec. Co., 166 Ala. 170, 172, 51 South. 861.

[2] It is of statutory requirement that the

---

⬦⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

city or town clerk within three months after taxes have become delinquent shall make out a list and certify thereto, "describing each piece of property separately, with the name of the owner, if known, and the amount of taxes due on such property, and the amount of taxes due by such owner upon personal property, which also may be collected by a sale of the realty as for taxes due thereon." Code, § 1319. This was a condition precedent to the discharge by the register in chancery of the duties imposed by statute upon such official as to giving the prescribed notice to the known or unknown owner of the property to be sold for unpaid taxes or assessments. Compliance with such statutory requirements held necessary that said sale divest the legal title out of the owner and invest the same in the purchasers thereat. Code, §§ 1320, 1321; Drennen v. White, 191 Ala. 274, 277, 68 South. 41; Mayor v. Allison, 191 Ala. 316, 68 South. 142; Gunter v. Townsend, 202 Ala. 160, 79 South. 644, 646, 657; Pollak v. Milam, 190 Ala. 569, 570, 67 South. 381; Lodge v. Wilkerson, 174 Ala. 133, 136, 56 South. 994.

In the instant case the certified delinquent tax list filed with the register in chancery recites that it was made by the "treasurer and tax collector", and not by the city clerk, and purports to be for the unpaid taxes for the year 1909 in the city of Birmingham. It does not indicate, as required by statute, the amount of taxes due for said year. The order of the register for publication as to the unknown owner was to effect that the chancellor would adjudge said property described liable "for such street improvement assessment." The certificate of publication as to such unknown owner was that the lots be sold for the payment of the taxes, charges, penalties, interest, and costs that are charged thereon. The decree was that said lots were "liable for such taxes in the sum of $2 with interest thereon to date of the payment thereof from the first day of January, 1910," and that the register be directed to sell the same "for the payment of taxes and interest as aforesaid," etc. The notice of sale to its unknown owner was to the effect that said sale of said lots was for payment of the taxes for said year 1909, viz.:

"Tax $2.00, Int. 14¢, Fee 50¢, Costs $10.00, Prt. $8.00–$20.64, sold to satisfy said decree.
"J. W. Altman, Register."

Due objections were made to the introduction in evidence of each of said papers, which were (respectively) overruled and to which rulings exceptions duly reserved.

[3, 4] The trial court committed no error in admitting in evidence the documents evidencing the several stages in the ineffectual effort in chancery to sell the lots in question for said taxes; though it is shown on the face thereof that the list of delinquent taxes filed with the register was certified to by the tax collector and treasurer of Birmingham rather than by its city clerk as required by statute, and that the order of publication was not pursuant to such delinquent list, but was for a sale of said lots to satisfy an unpaid assessment against said lots. Said documentary evidence was, however, not to show title, but as an attempt to sell, or an irregular sale of property for taxes that did not pass title out of the owner; yet it was not invalid, but passed to the purchaser the lien of the city for taxes, which lien "may be enforced by" such purchaser "in a court of equity, or may be collected by the municipality in any other case against the same property, and if collected, said sum shall be paid over to such purchaser." Code, § 1326; Baines v. Williams, 195 Ala. 525, 526, 70 South. 644; Gunter v. Townsend, supra. That is to say its legal effect was only to invest the purported purchaser with the lien of the city for the $2 delinquent tax, interest thereon from January 1, 1910, and the fee of 50 cents. The purchaser's lien on said lots did not extend to and embrace the cost incurred in chancery court of $10, or the cost of $8 incurred in giving the publication of notice adverted to.

The trial was had, and was so treated by the Court of Appeals, on the assumption that said proceeding in chancery was an investment of said purchaser—the Birmingham Loan & Discount Company—with the title to said property, rather than with the lien of the city for unpaid taxes. This is evidenced by the questions and answers, viz:

"Q. Did you pay the Birmingham Loan & Discount Company anything for a quitclaim deed to the property? A. Yes, sir. Q. How much? A. A hundred dollars. Q. When was it you paid them a hundred dollars? A. I paid them $75 in January, I mean December, 1913, and 25 in February or March"

and the evidence that a quitclaim deed to the lands by the Birmingham Loan & Discount Company was given plaintiff on payment of the $100. These questions were duly objected to, exceptions reserved to the adverse rulings of the court thereon, and motions to exclude made and due exceptions taken to such adverse rulings on the motions.

The view taken by the Court of Appeals that the tax sale vested the legal title in the purchaser, as to which redemption was barred by lapse of time, seems to have been the foundation of several of the rulings complained of, and which cannot be justified except upon that erroneous theory.

We therefore remand the cause to that court for another hearing to be had upon the corrected predicate of a defective sale, with an outstanding lien, instead of an outstanding title—a correction which necessarily affects the amount of plaintiff's recovery.

In Hood & Wheeler v. Clark, 141 Ala. 397, 37 South. 550, our court made observation

of the effect of general or statutory warranty as it affected the legal duty to pay taxes on the property embraced in the mortgage.

Writ awarded, and cause remanded.

McCLELLAN, SAYRE, SOMERVILLE, and GARDNER, JJ., concur.

ANDERSON, C. J., and BROWN, J., not sitting.