**In re Karen R. BROWN, Debtor.**

**Karen R. BROWN, Plaintiff,**

v.

**MINOR HEIGHTS FIRE DISTRICT and Tom D. Kimbrel, Defendants.**

Bankruptcy No. 94–05201–BGC–13.
Adversary No. 97-00311.

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

May 8, 1998.

Ronald Thompson, Birmingham, AL, for Debtor.

John Daugherty, Birmingham, AL, for Defendants.

Alan Levine, Birmingham, AL, for Mortgagee.

## MEMORANDUM OPINION

BENJAMIN COHEN, Bankruptcy Judge.

At approximately 10:30 a.m. on September 2, 1994, the defendant Minor Heights Fire District sold the debtor's home to the defendant Tom D. Kimbrel, and his mother. The sale was conducted by the District to satisfy a statutory lien that arose due to the debtor's

failure to pay the District's fire dues assessment. At approximately 1:30 p.m. on the same day, the debtor filed her Chapter 13 case. On June 30, 1997 the debtor filed the pending proceeding in which she contends that the sale was, and remains, void. The principle matters before the Court are the debtor's complaint and the parties' cross-motions for summary judgment regarding that complaint.

## I. PROCEDURAL BACKGROUND

The 14 specific matters before the Court are:

1. *Complaint for Injunctive Relief and Damages;*

2. *Motion to Dismiss Pursuant to Rule 12(b)(6) F.R.C.P.* filed by Minor Heights Fire District;

3. *Answer* filed by Tom D. Kimbrel; [1]

4. *Defendant's [sic] Motion for Summary Judgment* filed by Minor Heights Fire District and Tom D. Kimbrel;

5. *Motion for Summary Judgment* filed by the debtor;

6. *Objection to Motion for Summary Judgment by Plaintiff* filed by Tom D. Kimbrel and Minor Heights Fire District;

7. *Motion for Relief from Automatic Stay* filed by Tom D. Kimbrel;

8. *Objection to Relief from Stay* filed by United Companies Lending Corporation (the mortgagee of the property);

9. *Objection to Claim* No. 9 of Tom D. Kimbrel, filed by the debtor;

10. *Amendment to Schedules and Motion to Modify Plan Payments* filed by the debtor; [2]

11. *Objection to Amendment* filed by Tom D. Kimbrel;

12. *Motion for Sanctions, Pursuant to Rule 11 F.R.C.P.* filed by Tom D. Kimbrel; ·.

13. *Motion for Sanctions, Pursuant to Rule 11 F.R.C.P.* filed by the Minor Heights Fire District; and,

14. *Answer to Motion for Sanctions, Pursuant to Rule 11* filed by debtor's counsel to both motions.

A trial on the complaint was scheduled for December 2, 1997 but was not held.[3] At the final pretrial conference on December 1, 1997 the parties agreed that there were no disputes as to any material facts and that the Court could consider, based on the parties' submissions, the competing motions for summary judgment and all other matters.[4]

## II. FINDINGS OF FACT

The facts are not in dispute. The defendant Minor Heights Fire District is a public corporation created under Act No. 79, Ala.

1. The Minor Heights Fire District did not file a formal answer to the complaint.

2. An Amendment to Schedule and Motion to Modify [Proceeding No. 7 in 94–05201] was filed on October 25, 1994 by the debtor adding (among other creditors) a debt to the Minor Heights Fire District in the amount of $526.00. A notice of that amendment was sent to all creditors on October 26, 1994. No ruling has been made on that amendment.

An Amendment to Schedules and Motion to Modify [Proceeding No. 15 in 94–05201] was filed on June 25, 1997 by the debtor. That amendment added a debt to the Minor Heights Fire District in the amount of $3,796.54 (an amount which included the originally filed amendment amount of $526.00), and is the amendment objected to by Mr. Kimbrel and the one subject to this opinion. Unfortunately there are complicating factors. The amendment lists Minor Heights Fire District in care of Tom D. Kimbrel. Because the Order to be entered in conformity with this opinion states that the sale to Mr. Kimbrel is void, the Minor Heights Fire District will no longer have a secured claim against the property. By operation of Code of Ala.1975, § 11–48–53 that lien will be assigned to Mr. Kimbrel. Consequently, there will be no technical basis for this Court to allow the pending amendment. There is a solution however and that solution is discussed in the section of this opinion regarding the debtor's amendment to her plan and in the section discussing the debtor's objection to Mr. Kimbrel's claim.

3. The final pretrial conference served also for all pending matters and the trial of the complaint was to serve as the trial for all matters as well. Because of the agreement to submit the complaint issues on the agreed upon facts, those same facts serve for all matters, as do the parties' arguments on all of the issues.

4. The co-defendants agree between themselves on all legal and factual points.

Acts 1966, Special Session 1966, to provide fire protection to residents of a certain area.[5] In turn, the residents of that area, of which the debtor is one, are required to make periodic payments for that protection. The amount of each payment, or service charge, is determined by an assessment of each piece of property.[6] If a resident does not pay the required service charge, the District is awarded, pursuant to Section 12 of its enabling act, a lien on the property for the amount of the assessment. The District may, according to its enabling act, enforce that lien by way of a sale of the property, *"in the same manner in which the foreclosure of a municipal assessment for public improvements is authorized."* Act No. 79, 1966 Ala. Acts, Spec. Session, as amended. (Emphasis added).[7]

The parties agree that the District's assessment of the debtor's property was correct and that the debtor did not make all of her required payments and that the debtor's failure resulted in the statutory lien. The parties also agree that the District was then in a posture to sell the property, if certain conditions were met, in order to satisfy that lien.

The parties also agree that the District conducted a sale of the debtor's property on September 2, 1994 and that the sale was completed before 11:00 o'clock on that day. According to the *Fire District Service Fees Sale Deed* issued to the purchasers, the sale was conducted, "within the legal hours of sale," at The Fire Hall, 1135 Broad Street, Birmingham, Alabama, beginning at 10:00 a.m., and was conducted by Mr. Artis D. Coggins, president of the trustees of the Minor Heights Fire District. The District's co-defendant Tom Kimbrel, and his mother, purchased the property. Mr. Kimbrel has since paid all delinquent fees as well as fees accruing during the pendency of this case. The debtor has occupied the home since the sale.

The debtor's mortgagee, United Companies Lending Corporation, also contests the sale.[8]

## III. CONTENTIONS AND ISSUE

This controversy arises because the general procedures applicable to fire district sales do not contain a "legal hours of sale" standard, although for a sale of this type to be valid, the sale must occur within those hours. What that standard is, is the basis of these parties' disagreement.

The defendants contend generally that the sale was conducted within legal hours of sale, that the sale was valid, that the debtor's rights of redemption have expired and that even if the debtor has any remaining rights of redemption, that she may not, under the Court of Appeals for the Eleventh Circuit opinion in *Commercial Federal Mortgage*

---

5. In reference to another fire district, the Court of Civil Appeals of Alabama explained the creation and operation of such districts. In *Holmes v. Concord Fire District*, 625 So.2d 811, 812 (Ala.Civ.App.1993), the court's opinion reads:

 Concord is a public corporation created in 1975 pursuant to Ala. Acts 1966, Act No. 79, Special Session 1966. The establishment of fire districts in Jefferson County was originally authorized by Amendment 239, Ala. Const. 1901, subsequently amended by Amendments 314 and 369, Ala. Const.1901. These amendments specifically provide that the expenses of the fire districts of Jefferson County be paid from the proceeds of a "service charge" levied by the district's governing body.
 *Id.*

6. Fire district service charges are the obligation of the owner and occupant of the property. *Dewberry Engraving Co. of Alabama, Inc. v. North Shelby County Fire and Emergency Medical Dis-*

*trict,* 519 So.2d 490, 492 (Ala.1987). In this case, as in *Holmes v. Concord Fire District,* 625 So.2d 811, 812 (Ala.Civ.App.1993), "No question is raised regarding the efficacy of the public corporation created pursuant to the enabling legislation cited above, nor is it questioned that ... [the debtor] is a resident homeowner within the fire district." (Parenthetical added).

7. The parties infer that the procedures in Code of Alabama 1975, § 11–48–49, and related sections, are the procedures referred to in the quoted portion of section 12 of the enabling act.

8. This Court has no jurisdiction to decide a controversy between the purchasers and the mortgagee, (see *In re Sims,* 181 B.R. 125 (Bankr. N.D.Ala.1995) where this Court held that it did not have jurisdiction to decide a controversy between a mortgagee and a secured creditor where that controversy would have no effect on the bankruptcy estate).

*Corp. v. Smith (In re Smith),* 85 F.3d 1555 (11th Cir.1996), exercise those in this case.

The defendants also argue that the District's enabling statute allows sales of property to enforce statutory liens for fire district dues. The defendants argue that the procedures for such sales are contained in two Code of Alabama sections. First, section 11–48–49 they contend, contains the general procedures for conducting such sales. That section reads:

*Proceedings for sale of land upon failure of owner to pay assessment, installment or interest—Notice.*

If the property owner who has not elected to pay installments fails to pay his assessments within 30 days or, having elected to pay in installments, fails to pay the first installment in 30 days from the date of the assessment or makes default in the payment of any annual installment or the interest thereon, the whole of such assessment shall immediately become due and payable, and the officer designated by the municipality to collect such assessments shall proceed to sell the property against which the assessment is made to the highest bidder for cash, but he shall first give notice by publication once a week for three consecutive weeks in some newspaper published in the city or town or of general circulation therein of the date and time of such sale and the purpose for which the same is made, together with a description of the property to be sold. If said officer shall fail to advertise and sell any property on which said payments or installments are past due, any taxpayer of the issuing municipality or any holder of bonds of the series affected by said failure, whether of bonds heretofore issued or to be hereafter issued, shall have the right to apply for a writ of mandamus requiring said official to take such action to any court of competent jurisdiction, and said court shall, on proof, issue and enforce such writ.

Code of Ala.1975, § 11–48–49.

Second, because section 11–48–49 does not designate what "legal hours of sale" apply to such sales, the defendants contend (based on a theory that assessment sales and tax sales should be conducted in the same manner), that the time provision contained in tax sale section 40–10–15, provides the specific "legal hours of sale" standard that applies to any sale conducted under section 11–48–49.[9]

Section 40–10–15 reads:

*How sale made; duties of judge of probate.*

Such sales [sales of real estate for the payment of taxes] shall be made in front of the door of the courthouse of the county at public outcry, to the highest bidder for cash, between the hours of *10:00 A.M. and 4:00 P.M.,* and shall continue from day to day until all the real estate embraced in the decree has been sold. The judge of probate must attend such sales and make a record thereof in a book to be kept by him in his office for that purpose, in which he shall describe each parcel of real estate sold and state to whom sold, the price paid by the purchaser, the date of sale and, if

---

**9.** The District argues that section 40–10–15 applies by way of Code of Ala.1975, § 11–51–50, the procedure for collecting certain taxes. That section reads:

*Procedure for collection of taxes, etc., by county tax collector generally.*

All laws now in force or hereafter enacted in regard to the collection of state and county taxes and procedure with reference thereto and the enforcement of collection shall apply to and be in force as to such municipal taxes, *except as such laws are changed by or in conflict with the provisions of this article,* and the county tax collector shall collect or enforce the collection of such municipal taxes at the same time, in the same manner and way and as a part of one and the same collection as the collection of state and county taxes and all procedure incident to or in any wise connected with the collection of state and county taxes shall be equally applicable to the collection of said municipal taxes, and all such municipal taxes shall be collected in the same way and in the same proceedings as state and county taxes.

Code of Ala.1975, § 11–51–50 (emphasis added).

The District argues that the language, "except as such laws are changed by or in conflict with the provisions of this article," allowed the District to select the procedures in section 40–10–15 as the procedures to follow in making sales such as the one contested.

no sale was effected, stating that fact, and the reason thereof, and also in separate columns the amounts, as taken from the book or docket in which the decrees are entered, of each kind of tax penalties and of the fees and costs in each case, and he must also enter in such docket, in each case, the land sold under the decree in that case, the purchaser thereof and the amount at which it was sold.

Code of Ala.1975, § 40–10–15 (parenthetical added) (emphasis added).

The defendants conclude that the *10:00 a.m. to 4:00 p.m.* time in section 40–10–15 is a specific statutory provision that controls the general procedures for public sales conducted pursuant to section 11–48–49 to foreclose municipal assessments for public improvements.[10] And although section 40–10–15 relates by its own terms to *tax sales,* the defendants argue that the special assessments of the District should be considered like taxes for purposes of collection and thus should be collected in the same manner as taxes, that is in accordance with section 40–10–15.

The debtor and the mortgagee disagree and contend generally that the sale was not valid, but that if it were, the debtor did not receive notice sufficient to erode her rights of redemption. Specifically the debtor and the mortgagee agree that the District's enabling statute allows sales of property to enforce attached liens and they agree with the District that the general procedure for conducting those sales is contained in section 11–48–49; however, the debtor and the mortgagee disagree that special assessments by fire districts are to be treated like taxes (where the 10:00 a.m. to 4:00 p.m. time period applies) and they contend that the void in section 11–48–49 must be filled by the specific time provision in Code of Ala.1975, § 6–8–41, a Code section that provides for the "legal hours of sale" for "all public sales as between the hours of 11:00 a.m. and 4:00 p.m."

10. See note 18.

11. The defendants concede that because the sale was conducted outside the time period of section 6–8–41, that if that section applies, the sale is void.

Section 6–8–41 reads, "All public sales shall be made between the hours of *11:00 A.M. and 4:00 P.M.,* but in the event such sale is not completed by 4:00 P.M., the same may be continued until 5:00 P.M." Code of Ala.1975, § 6–8–41 (emphasis added).[11]

Because the sale occurred after 10:00 a.m. but before 11:00 a.m., the critical issue is whether the sale was conducted within "legal hours of sale."

## IV. CONCLUSIONS OF LAW

The 14 matters before the Court fall within five categories. These are: (A) complaint related matters; (B) amendment to schedule matters; (C) the objection to claim; (D) relief from stay matters; and (E) the motions for sanctions.

## A. COMPLAINT RELATED MATTERS: Complaint for Injunctive Relief, Motion to Dismiss, and Summary Judgment Motions

The Court finds that the District's sale was conducted neither within "legal hours of sale" ·nor in full compliance with statutory procedures. Consequently, the Court finds that the sale of the property was not valid and thus is void.

### 1. Statutory Requirements

 *A public sale of land in Alabama to collect an assessment must be conducted strictly in accordance with whatever statute controls the procedures for that sale, or the sale is void.*[12] See, *Almon v. Champion International Corp.,* 349 So.2d 15 (Ala.1977); *State ex. rel. Gallion v. Graham,* 273 Ala. 634, 637, 143 So.2d 810, 812 (1962) ("One claiming under a tax title bears the burden of proving compliance with each and every requirement as to assessment, failure to pay taxes, giving of notice, holding of sale and execution of the tax deed."); *Laney v. Proctor,* 236 Ala. 318, 319, 182 So. 37, 38 (1938) ("The rule is firmly established in this juris-

12. There is of course a presumption that such sales are conducted in accordance with the statutes, but that presumption is only prima facie. *Laney v. Proctor,* 236 Ala. 318, 319, 182 So. 37, 38 (1938).

diction, as well as elsewhere, that the burden is upon the party claiming under a tax title to show the necessary and substantial compliance with all statutory requirements culminating in the sale of the taxpayer's property to discharge the tax lien of the state and county, and the courts are enjoined to give a strict construction to such proceedings in determining the question of their regularity and validity."); *Ex parte Helm,* 209 Ala. 1, 95 So. 546 (1919); *Gunter v. Townsend,* 202 Ala. 160, 79 So. 644 (1918); *Roy v. Roy,* 159 Ala. 555, 48 So. 793 (1909).

■ *Without question, this doctrine applies to sales to satisfy assessments such as the one in this case.*[13] See, *Drennen v. White,* 191 Ala. 274, 277, 68 So. 41, 42 (1915). In *Drennen* the court explained:

> There is no reason why the stated rules should not have like application in cases where the purpose and effort was to divest the title of the nonconsenting individual owner in order to satisfy a charge for street improvements provided, of course, some other inconsistent, applicable rule is not expressly made to govern in the premises. In each instance the property is undertaken to be subjected in furtherance of governmental activities and under governmental authority.

*Id.*

While some may argue that such a strict interpretation is merely the imposition of a technical requirement that has no practical support (particularly where the difference between 10:00 a.m. and 11:00 a.m. determines whether a sale of land is valid or not), the equitable reasons for such an interpretation are quite important.[14] In *Almon v. Champion International Corp.,* 349 So.2d 15 (Ala. 1977) Justice Richard L. Jones explained:

13. This Court does not consider the application of the doctrine to both tax sales and assessment sales to be any support for the defendants' argument that such sales should be governed by the same procedures. The doctrine is applicable to many statutes that are otherwise unrelated. Those applications, like the ones here, do not modify the substantive operations of those statutes.

14. As discussed below, Alabama courts have accepted that public sales, "must take place within

The State's power to recover delinquent taxes through a sale of the taxpayer's property is derived solely through statute. The purpose of such a procedure is only to provide a means by which the State can receive its due. The methods it employs are intended primarily to coerce the unwilling (or inadvertent) taxpayer to pay his taxes, not to strip him of his property. 85 C.J.S. Taxation § 744. More often than not, however, where a sale is effected, *it results in a substantial forfeiture of the taxpayer's property because the value of such property almost always exceeds the amount of taxes owed.* Accordingly, the Court will be quick to protect the rights of the taxpayer.

*Id.* at 17 (emphasis added).[15]

## 2. Enabling Act

There are many statutes to consider in resolving the matters before the Court. First, the Court has considered the ones creating the District. To begin, "Amendment No. 239 to the Alabama Constitution, ratified in 1965, allowed the legislature to provide for the formation of fire protection districts in Jefferson County." *Parker v. Mount Olive Fire and Rescue District,* 420 So.2d 31, 32 (Ala.1982). "Act No. 79 of the Special Session of the Alabama Legislature, 1966, as amended (Act 79), provides the procedure for establishing fire and rescue districts in Jefferson County." *Id.*

The parties agree that these laws allowed for the creation of the Minor Heights Fire District and that the District was formed with all of the rights and powers afforded by the law. Section 12 of Act 79 provides for the rights and powers pertinent to this case. That section reads:

> a specific and narrow time frame." *Helms v. First Alabama Bank of Gadsden, N.A.,* 386 So.2d 450 (Ala.Civ.App.1980), cert. denied, 386 So.2d 455 (Ala.1980). Obviously specific time periods are to prevent midnight sales or sales at other unreasonable times.

15. In this case, according to the deed issued to Mr. Kimbrel, the debtor owed the District only $526.00 at the time of the sale.

Section 12. The expense of establishing and maintaining a district shall be paid for by the proceeds of a service charge which shall be levied and collected in an amount sufficient to pay said expense. Said service charge shall be levied upon and collected from persons and properties served by the system. Such charge shall be a personal obligation of the occupant of the property served by the system; and to secure the collection of the charge there shall be a lien against said property in favor of the district, *which lien shall be enforceable by sale thereof in the same manner in which the foreclosure of a municipal assessment for public improvements is authorized.*

Act No. 79, 1966 Ala. Acts, 110 (Spec. Session), as amended (emphasis added).

The parties propose, and agree among themselves, that the procedure referred to in section 12 as "in the same manner in which the foreclosure of a municipal assessment for public improvements is authorized," refers to Code of Ala.1975, § 11–48–49.[16] That section does not however, as the parties point out, contain a time requirement for actual sales, a requirement the parties agree must exist, must be identified and must be satisfied. Given this void, the parties propose procedures from other statutes. As noted above, the defendants argue for Code of Ala.1975, § 40–10–15. The debtor and her mortgagee argue for Code of Ala.1975, § 6–8–41.

### 3. Time of Sale Requirement

Whatever time of sale is permissible, that time must, under Alabama law, be within the state's "legal hours of sale."

In *Helms v. First Alabama Bank of Gadsden, N.A.,* 386 So.2d 450 (Ala.Civ.App.1980), writ denied, 386 So.2d 450, 454 (Ala.Civ.App.

1980), the Alabama Court for Civil Appeals interpreted the phrase, "legal hours of sale," to mean that, "as a matter of law, public sales... must take place *within a specific and narrow time frame.*" Emphasis added. In *Helms,* a public notice of sale did not contain a specific time for the sale but only stated that the sale would be held "between the legal hours of sale." The notice was challenged. The appeals court found that this lack of specificity was acceptable.[17] *Because of the existence of section 6–8–41,* the section that provides for all public sales to be conducted between 11:00 a.m. and 4:00 p.m., the Court reasoned that the time of the sale was specific because the sale was required to be held within the specific period of 11:00 a.m. to 4:00 p.m.

The court found that the general notice "within the legal hours of sale" included any time within this period. This holding is extremely important, as the *consequence of it is that if public sales are to be conducted within legal hours of sale, then those sales must be conducted between the hours statutorily specified,* otherwise there would be no specific time in which those sales could be held or an exact period in which those interested in such sales could expect the sales to be held. Consequently, whatever those time periods happen to be, they must be satisfied.

### 4. Special Assessments and Taxes

The foundation of the defendants' argument that the legal hours of sale in section 40–10–15 apply to the District's sale, is that unpaid municipal assessments are to be treated like unpaid municipal taxes and are therefore to be collected in the same manner as unpaid taxes.[18] This Court disagrees.

---

**16.** The same or similar "in the same manner" language appears in other acts. See *Opinion of the Justices,* 287 Ala. 337, 251 So.2d 755 (1971) relating to enforcement of liens for sewer charges in Jefferson County, Alabama and Code of Ala.1975, § 11–67–43 relating to enforcement of liens for cost of abating grass and weeds in certain municipalities.

**17.** The court reasoned that if sellers were required to select a specific time, but that a sale was delayed beyond the time selected, even for a

few minutes, then the sale could be open to criticism.

**18.** The defendants argue that the specific provisions of section 40–10–15 control the general provisions of section 6–8–41, as both relate to section 11–48–49. The defendants rely on the maxim, *generalibus specialia derogant.* Or as described in, *Geter v. U.S. Steel Corp.,* 264 Ala. 94, 97, 84 So.2d 770, 773 (1956), "special provisions relating to specific subjects control general provisions relating to general subjects." *Id.* (Citations omitted.) See also *Coffee County Comm.*

Alabama statutes have consistently demonstrated, and Alabama courts have consistently held, that special assessments, such as the one in this case, are not taxes.

(a) Statutes

■ Code of Ala.1975, § 11–48–34(a), a complementary section to section 11–48–49, demonstrates the separation of special assessments and taxes. That section reads:

*Effect of enforcement of tax liens upon property upon assessment liens; duration of assessment liens.*

The enforcement by the state, county, city or town of its lien for taxes on any lot upon which has been levied an assessment for any improvement authorized by this article shall not operate to discharge or in any manner affect the lien of the municipality for the assessment, but *any purchaser at any tax sale* by the state, county, city or town of any lots or parcels *of land upon which an assessment has been levied shall take them subject to such assessment.*

Code of Ala.1975, § 11–48–34(a) (emphasis added).

Under this section and those related to it, sales involving tax liens and sales involving

special assessments are treated differently. The Title 11, chapter 48 sections, read in conjunction, confirm a self contained procedure for collecting unpaid special assessments, lacking only a specific time procedure (for purposes of this case) for those collections. In fact *there are 65 sections under Chapter 48 of Title 11* relating to public improvements and assessments. All are related to section 11–48–49, the operative, applicable section here, but none of those 65 sections contain a "legal hours of sale" provision. This Court must conclude that if the Alabama Legislature had intended that the specific provision relating to tax sales was to apply to such sales, or *that the general provision of section 6–8–41 was not to apply,* the Legislature would have put a controlling provision in at least one of those 65. They did not, which is why, without that specificity, this Court agrees with the debtor that the general provision in section 6–8–41 remains applicable to section 11–48–49 sales.[19]

(b) Case Law

In reference to the 1907 version of section 11–48–34 and its related statutes (Code of Alabama 1907, § 1359 to § 1420), the Supreme Court of Alabama stated, "That there is a well-defined distinction between general taxation and a local assessment for public improvements, such as pavement, sewerage,

*v. Townsend,* 583 So.2d 985, 988–89 (Ala.1991). While this maxim is one of those few unforgettable law school teachings, even it has its limitations. The pertinent one here is that the statutes being compared must be *in pari materia,* that is, they must relate to the same subject. *Jackson v. Jackson,* 709 So.2d 46, 47 (Ala.Civ.App. Dec. 19, 1997). And while this Court agrees that section 40–10–15 and section 11–48–49 and section 6–8–41 are related by reference to sales of property, and even that section 40–10–15 and section 11–48–49 may be considered related because both address failures to pay assessments of some type, because of the legal and common sense differences between special assessments and taxes, this Court does consider that any of these sections are *in pari materia.* Title 40 relates to revenue and taxation. Title 11, Chapter 48 relates to public improvements and assessments. And Title 6 governs civil practice. The specific provisions of section 40–10–15 may be sufficiently related to other tax sale sections to resolve any conflicts that may exist there, but that cannot be the conclusion in regards to special assessments.

On the other hand, ironically these sections do demonstrate how the maxim can be applied. If

section 40–10–15 did not exist, then probably section 6–8–41, as a general statute, would apply to tax sales; but, because there is the specific statute 40–10–15, *for purposes of tax sales,* the specifics of section 40–10–15 override the general. However, that occurs only because section 40–10–15 is *in pari materia* with other tax sale statutes. Section 40–10–15 is not *in pari materia* with section 11–48–49 or section 6–8–41. None of these statutes override the others. There is simply no specific section for assessment sales like there is for tax sales. There is no "40–10–15" for "11–48–49." The general provision of 6–8–41 must continue to control.

**19.** See note 18. Resorting to section 40–10–15, and the many sections containing the many procedures for collection of tax assessments, would be debilitating. Like section 11–48–49, section 40–10–15 may not be isolated. That section must be considered in the context of the title and chapter in which it appears. If this Court were to apply section 40–10–15 to the pending matter, this Court would be required to apply all related sections regardless of whether those many sections were in conflict with the procedures of Title 11 special assessment procedures.

etc., there can be no doubt." *City of Huntsville v. County of Madison*, 166 Ala. 389, 391, 52 So. 326 (1910).

Similarly, in reference to the District's enabling act, the Court of Civil Appeals of Alabama has held that, "fire district charges are not a 'tax' but are like special assessments, made non-uniformly, depending on the specific service or classification of the property served." *Holmes v. Concord Fire District*, 625 So.2d 811, 813 (Ala.Civ.App. 1993).

The basis for making these distinctions is well founded. As Judge Charles A. Thigpen wrote in *Holmes*, on the issue of whether a special assessment is a tax:

> Dispositive of this issue is *Dewberry Engraving Co. of Alabama, Inc. v. North Shelby County Fire & Emergency Medical District*, 519 So.2d 490 (Ala.1987), in which our Supreme Court held that fire district charges are not a "tax" but are like special assessments, made non-uniformly, depending on the specific service or classification of the property served.
>
> In *Horgan v. Dauphin Island Water & Sewer Authority*, 409 So.2d 1359 (Ala. 1982), our Supreme Court chronicled the legal history of special assessments, such as here, stating that a special assessment levied against property that benefits from a public improvement is not a tax. There, it is written that, with a special assessment, "[i]n the words of Justice Gardner: 'The owners do not, in fact, pay anything in excess of what they receive by reason of such assessment.' " *Horgan* at 1367. See *Collins v. Hollis*, 212 Ala. 294, 102 So. 379 (1924). See also *Village of Norwood v.*

*Baker*, 172 U.S. 269, 19 S.Ct. 187, 43 L.Ed. 443 (1898). However,

> " '[a] tax, it is said, is a contribution to the general fund, the amount of it is taken from the individual, and nothing which benefits him individually, as distinguished from the mass of citizens, is given in the place of it. He pays, and by the amount he pays is poorer than he was before.' "

*Horgan* at 1366. (Quoting *Mayor, etc., v. Klein*, 89 Ala. 461, 7 So. 386 (1890).)

> "The charges in question, like a special assessment, are made non-uniformly, depending upon the specific service and/or upon the classification of the property served. The owners are all located within a specifically defined geographical area, and they do not pay for anything in excess of the fire protection service they receive. Additionally, because of the service provided, the value of their property is increased and their insurance rates are lowered."

*Dewberry* at 492.

> Holmes's argument that the charges constitute a tax collapses under the overwhelming weight of authority to the contrary, and, consequently, he is liable for payment of the fire protection fees.

*Id.* at 813.[20]

The District's enabling statute was enacted in 1966, long after the procedures for collecting assessments for public improvements were established; long after the procedures for collecting unpaid taxes were written and applied; and well *after many of the cases discussed above were decided.* As enacted, the statute allows a sale to enforce a lien, "in the same manner in which the foreclosure of

---

**20.** See also, *Williams v. Rabren*, 431 So.2d 505, 508 (Ala.1983) ("Where real property is encumbered by both tax and assessment liens, the property may be sold to satisfy the tax lien, even though an outstanding assessment lien exists, because of the statutorily mandated priority of tax liens.").

In *Downing v. City of Russellville*, 241 Ala. 494, 3 So.2d 34 (1941), the same court recognized, in quoting 44 C.J. 806, § 3416, that:

> assessment liens arising under statutes authorizing public improvements of streets "are subject to any and all liens or claims whatsoever which the state may have against the property, including liens of the state for taxes, *unless the*

> *case falls within a statute placing assessment liens and tax liens upon parity."*

241 Ala. at 500, 3 So.2d at 38 (emphasis added.)

This Court has not found that assessment liens and taxes are in parity for purposes of collection and neither have the Alabama courts. To the contrary, in *City of Huntsville v. County of Madison*, 166 Ala. 389, 52 So. 326, 327 (1910) the court found that an action to enforce a tax lien is an action at law. But in *Downing* the court stated, "In foreclosing the assessment lien in equity against such purchaser, the complaint must offer to do equity, by satisfying the paramount liens the purchaser has removed." 241 Ala. at 502, 3 So.2d at 40 (on rehearing).

a municipal assessment for public improvements is authorized." Given the many cases interpreting the differences between special assessments and taxes, the selection of that phrase by the Legislature is significant. If the Alabama Legislature had intended that special municipal assessments should be enforced in the same manner as tax collections, this Court must conclude that the Legislature would have said that the liens are to be enforced in the same manner as the sale of real estate for the payment of taxes.

This Court is not persuaded that the provisions of 40–10–15 should *now be applied* to control sales under section 11–48–49, where such an application was not instituted by the Legislature when the District's enabling statute was passed in 1966. What the legislature did choose to do however, was to enact a law that provided that assessment liens in favor of fire districts are enforceable *"in the same manner in which the foreclosure of a municipal assessment for public improvements is authorized."* Regardless of *what that "manner" is*, this Court has no doubt as to *what that "manner" is not.* And it is not the procedures in section 40–10–15.

The District's argument that section 40–10–15 applies, must be rejected. Special assessments may not be treated as taxes for purposes of collection.

### 5. Legal Hours of Sale and Foreclosure of a Municipal Assessment

The remaining question is what legal hours of sale apply where, "the foreclosure of a municipal assessment for public improvements is authorized." Section 6–8–41 is the only statute, general or special, that could provide the necessary structure for conducting municipal assessment sales and in the opinion of this Court, that statute is the only logical one to apply.[21] For the reasons stated above, and as a matter of law, the Court

finds that section 6–8–41 applies to sales of land for the purpose of enforcing a fire dues assessment lien.[22]

### 6. Full Compliance With Statutory Procedures

Even if section 40–10–15 applies, while the District's sale may have been conducted within the legal hours of sale under that section, the sale was not otherwise conducted in conformity with the provisions of 40–10–15, thus the sale violated the recognized law in Alabama that public sales of land to collect assessments must be conducted strictly in accordance with whatever statutes control the procedures for those sales, or those sale are void.

If section 40–10–15 controls the specific procedure for the sale of property in the foreclosure of municipal assessments, this Court would find that the District complied only with the *time of sale* requirement of the statute. And in contrast to the District's argument that the excepting language of section 11–51–50 allows the District to select one requirement from one statute and another from another statute (see note 9), this Court finds that if the District selects a statute for purposes of legal hours of sale, then the District must comply with all other requirements of that statute. Consequently, if section 40–10–15 applies, the District must comply with all requirements of that section, including the *location of sale* requirement of that statute. It did not.[23]

Thus, whether the sale was conducted pursuant to section 6–8–41 or section 40–10–15, the District failed to satisfy the statutory conditions of either. Section 6–8–41 requires that all sales be conducted between 11:00 a.m. and 4:00 p.m. The sale was concluded before 11:00 a.m.; thus, the sale is void.

---

**21.** The District's sale of the debtor's property is void because the sale was not conducted with this state's *legal hours of sale.* The "place" that such a sale must be held, if held within those hours, is not the subject of this opinion.

**22.** The defendants concede that if section 6–8–41 applies, because the sale was outside of the legal hours of sale, that the sale is void. Whether the sale is void or voidable is a debatable issue. The Alabama cases cited above do not appear to

make the distinction, but some other states' courts have.

**23.** The practices of selling items, "at public outcry, ... at the usual place of making public sales, within the legal hours...." *Pickering v. Townsend,* 118 Ala. 351, 23 So. 703, 704 (1898), have existed for at least the last 100 years (the quote does not appear in The Alabama Reporter edition). The practical reasons are obvious.

Section 40-10-15 requires that all sales be conducted in front of the door of the courthouse and that the probate judge attend and make a record of the sale. The sale was conducted at the District's fire hall without the probate judge; thus, the sale is void.[24] In this case, the District either failed under Code of Ala. § 6-8-41 to conduct the sale within the times proscribed or failed to conduct in the manner proscribed in Code of Ala. § 40-10-15. Whichever, the sale is void and has no effect.

Based on the above, the Court finds that municipal assessments for public improvements are not municipal taxes and that the time period for sales in which the "foreclosure of a municipal assessment of municipal improvements is authorized" is controlled by Code of Alabama 1975, § 6-8-41 relating to the legal hours of all public sales.

For the above reasons, the Court finds that:

1. To the extent of the Court's recognition that the sale is void, the relief requested in the *Complaint for Injunctive Relief and Damages* is due to be allowed;

2. The *Motion to Dismiss Pursuant to Rule 12(b)(6) F.R.C.P.* filed by Minor Heights Fire District is due to be denied;

3. The *Defendant's [sic] Motion for Summary Judgment* filed by Minor Heights Fire District and Tom D. Kimbrel is due to be denied;

4. Because there are no genuine issues as to any material facts, the debtor is entitled to judgment as a matter of law and the *Motion for Summary Judgment* filed by the debtor is due to be granted and judgment is due to be entered in favor of the debtor; and,[25]

5. The *Objection to Motion for Summary Judgment by Plaintiff* filed by Tom D. Kimbrel and Minor Heights Fire District is due to be overruled.

## B. AMENDMENT TO SCHEDULE MATTER:
### Amendment to Schedules, Motion to Modify Plan Payments, and Objection to Amendment

The debtor amended her Chapter 13 plan on June 25, 1997 to include the $3,796.54 she contends is owed for delinquent fire dues.[26] Mr. Kimbrel, in protecting his contentions regarding the sale, objected to the debtor's amendment and contends now that not only has he paid all delinquent and post-petition fire dues but also that he is the only person authorized to make such payments, based of course on the assumption that his purchase of the property was valid.[27] In contrast, based on the theory that the sale is void, the debtor seeks to add whatever past due amounts would be due.

This Court finds that because the District's sale was void, the debtor owes whatever amounts became due before and after the sale. Regardless of whether Mr. Kimbrel paid those amounts or not, the Court finds that those amounts are now owed by the debtor, however, by operation of Code of Ala.1975, § 11-48-53, the lien securing payment of those amounts lies with Mr. Kimbrel, rather than the District.

When the debtor failed to pay her fire dues, the District obtained a lien against the debtor's property, that security coming by operation of law. Because the sale is void, whatever lien existed against the property remained enforceable against the property and the debtor. The lien remained attached to the debtor's property and the value of the

---

24. The parties have not argued in favor of any other procedures and this Court is not aware of any.

25. In her complaint the debtor asked that the sale be held to be void, with which this Court agrees. But the debtor also asked for damages; however, there is no evidence before the Court that the debtor suffered any compensable damages. Consequently, this Court finds that only the part of the relief requested relating to the validity of the sale is due to be granted.

26. See note 2.

27. Mr. Kimbrel did not argue that he is entitled to a lien on the property pursuant to Code of Ala.1975, § 11-48-53, and the District did not argue that it retains its lien.

property secures that lien; *however,* pursuant to Code of Ala.1975, § 11–48–53, that lien has been assigned to Mr. Kimbrel. That Alabama Code section reads:

*Proceedings for sale of land upon failure of owner to pay assessment, installation or interest—Effect of error or defect in notice or sale.*

No mistake in the notice of sale in the description of the property or in the name of the owner shall vitiate the assessment or the lien and *if, for any reason, the sale made by the city or town is ineffectual to pass title, it shall operate as an assignment of the lien,* and, upon the request of the purchaser, supplementary proceedings of the same general character as required in this article may be had to correct the errors in said proceedings for his benefit or the lien so assigned to him may be enforced by civil action.

*Id.* (emphasis added). Thus because of this Court's holding that the sale was "ineffectual to pass title," the District's lien has been assigned from the District to Mr. Kimbrel by operation of law.

But in regards to the debtor's amendment, because this secured claim is no different than any other filed in Chapter 13 cases, the debtor is entitled, given that relief from stay should not be granted (as discussed below), to an opportunity to pay that claim within a reasonable time. For these reasons, and those supporting the denial of relief from stay, the *Amendment to Schedules* filed by the debtor is due to be allowed as an amendment adding a claim in favor of Mr. Kimbrel and the *Motion to Modify Plan Payments* filed by the debtor is due to be granted and the debtor's plan payments increased to $110.00 bi-weekly.

### C. Objection to Claim of Tom Kimbrel

██ Mr. Kimbrel filed a claim in the debtor's chapter 13 case for $10,200.00. While there are no attachments, the filed proof of claim indicates that it represents "post-petition rent arrearage." Mr. Kimbrel contends that he is entitled to "rent" for the debtor's use of the property, regardless of whether the sale is void or not.

"Normally, cancellation of a deed requires a tender to the purchaser of the amount given in consideration." *Craig v. Craig,* 372 So.2d 16, 21 (Ala.1979) (citing *Laird v. Columbia Loan & Investment Co.,* 204 Ala. 246, 85 So. 521 (1920)). Because this sale is void, if Mr. Kimbrel is entitled to any damages, he must seek them from some source other than the debtor and in some other court, particularly where state law provides him the specific remedy of the lien assignment and bankruptcy law provides him the avenue for collection on the debt represented by that lien. If the sale was void, it remained void. Whatever responsibility the debtor had to pay for the property is between the debtor and the mortgagee, not between the debtor and the District or the debtor and Mr. Kimbrel. Any claim for damages that does not involve the debtor or this bankruptcy estate is outside the jurisdiction of this Court. See this Court's order in *In re Sims,* 181 B.R. 125 (Bankr.N.D.Ala.1995) (there was no jurisdiction to decide substantive issues between a mortgagee and a secured creditor.) The debtor does not have any obligation to Mr. Kimbrel for "rent." On the other hand, as held above, the debtor *is* indebted to Mr. Kimbrel for the "unpaid" fire dues for which Mr. Kimbrel has a secured claim.

For the above reasons, the Court finds that the *Objection to Claim* No. 9 of Tom D. Kimbrel, filed by the debtor is due to be sustained to the extent that it includes any amount in excess of the unpaid fire dues, plus whatever interest may have accrued on those dues, if any.[28]

### D. RELIEF FROM STAY MATTERS: Relief From Stay and Objection by United Companies

The District and Mr. Kimbrel contend that the sale of the property was valid and that the debtor does not have any remaining

---

**28.** Because there is no evidence before the Court other than that supporting an amount of unpaid dues of $3,796.54, the Court would find, absent a renewed objection to the debtor's amendment, that Mr. Kimbrel's claim is due to be allowed for $3,796.54.

rights of redemption. Alternatively, they contend that even if the debtor does have any remaining rights of redemption, those rights may not be exercised in this Chapter 13 case.[29] In support of that alternative position, they rely on the Court of Appeals for the Eleventh Circuit opinion in *Commercial Federal Mortgage Corp. v. Smith (In re Smith)*, 85 F.3d 1555 (11th Cir.1996). Because this Court finds that the sale was void, the debtor has whatever interests she had prior to the sale; consequently, the Court need not address this argument.

On the other hand, the Court must address the substance of Mr. Kimbrel's motion for relief from the stay. When so considered, the Court finds that the motion is due to be denied. The Court finds that the current claim against the debtor's property is no different than any other secured creditor and that the motion is due to be considered in that context. The complicating factor here is that until the effective date of this Court's order holding that the sale is void, Mr. Kimbrel will not have the interest he *will have* in the property, that is the interest by assignment of the District's lien. However, this Court's current discussion of the section 362 relief from stay issues assumes that the assignment has already occurred.

### 1. Section 362(d)(2)

▮ Under section 362(d)(2) of the Bankruptcy Code, 11 U.S.C. § 362(d)(2), Mr. Kimbrel is entitled to relief from the automatic stay if the debtor does not have equity in the property **and** the property is not necessary for the debtor's financial reorganization. While there is no direct evidence of the value of the property, this Court must assume that there is equity of at least the value of the secured claim against the debtor, but even if there is none, certainly the debtor's home is necessary to her financial reorganization, and for that reason relief from stay may not be granted pursuant to this subsection.

### 2. Section 362(d)(1)

▮ Under section 362(d)(1) of the Bankruptcy Code, 11 U.S.C. § 362(d)(2), Mr. Kimbrel is entitled to relief from the automatic stay for cause, including the lack of adequate protection of its interest in the property. For the following reasons however, the Court finds that the secured interest is adequately protected.

Even if the debtor does not pay the delinquent fire dues, as a practical matter, adequate protection for the secured claim comes (even if there is no equity in the property over and above the amount of the delinquent fire dues) in three ways.[30] One, had this property been properly sold, the sale would have had a profound impact on the mortgagee because in Alabama the law appears to be that a purchase of real estate that was sold to satisfy a lien for a municipal improvement assessment acquires title superior to a mortgagee's lien against that same property. See *United States Bond & Mortgage Co. v. City of Birmingham*, 229 Ala. 536, 158 So. 751 (1935). The mortgagee has been given a reprieve for its failure to properly protect its interest in this property, and this Court must assume that the mortgagee will not make the same mistake again. In that since, there is no doubt that the delinquent fire dues will be paid, either through the debtor's Chapter 13 case, or by the mortgagee prior to or at "another" sale of the debtor's property. Two, the lien on the property has attached, the interest is secured, and if the property is sold, because the secured claim appears to be superior to the mortgagee's, the claim would be paid. Three, if this debt is added to the debtor's Chapter 13 case, her schedules indicate that she has sufficient disposable income to pay the debt in a reasonable time. For these reasons, relief from the stay may not be granted under this subsection.

---

**29.** An owner has a right to redeem property sold at a municipal assessment foreclosure sale. The period of time in which that right may be exercised ranges from two to six years, depending on certain facts and statutory construction. See *Williams v. Rabren*, 431 So.2d 505 (Ala.1983). In this case, because the Court finds that the sale was not valid, any issue regarding redemption is moot, however the parties agree that the debtor has not exercised any redemption rights, whatever those rights may be.

**30.** The debtor of course would have to make all future payments if adequate protection is to remain.

For the above reasons the Court finds that the *Motion for Relief from Automatic Stay* filed by Tom D. Kimbrel is due to be denied and the *Objection to Relief from Stay* filed by United Companies Lending Corporation is due to be sustained (to the extent that the Court has jurisdiction over that objection.) [31]

### E. Motions for Sanctions

Each defendant filed an independent, but identical, *Motion for Sanctions, Pursuant to Rule 11 F.R.C.P.* against the debtor's attorney. The Court finds that those motions are due to be denied. The test for determining Fed.R.Civ.P. 11 sanctions (and presumably the test for Fed.R.Bankr.P. 9011 sanctions), is explained in *Jones v. International Riding Helmets*, 49 F.3d 692, 695 (11th Cir.1995) where Judge Joel F. Dubina, writing for the court stated:

> In this circuit, a court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry. *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1563 (11th Cir.1992). If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound. *Id.* The reasonableness of the prefiling inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the underlying facts; and whether the paper was based on a plausible view of the law. *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir.1987) (en banc). The reasonableness of the inquiry may also depend on the extent to which factual development requires discovery. *Mapco*, 958 F.2d at 1563.

49 F.3d at 695.

Without question, this test has not been satisfied. Both motions are due to be denied.

Not only were the debtor's attorney's filings not frivolous, because of them, judgment is due to be entered in favor of the debtor.

For the above reasons, the Court finds that the *Motion for Sanctions, Pursuant to Rule 11 F.R.C.P.* filed by Tom D. Kimbrel is due to be denied and the *Motion for Sanctions, Pursuant to Rule 11 F.R.C.P.* filed by the Minor Heights Fire District is due to be denied.

## V. CONCLUSIONS

For the reasons expressed above, the Court concludes that:

1. *Motion to Dismiss Pursuant to Rule 12(b)(6) F.R.C.P.* filed by Minor Heights Fire District is due to be denied;

2. *Defendant's [sic] Motion for Summary Judgment* filed by Minor Heights Fire District and Tom D. Kimbrel is due to be denied;

3. There are no genuine issues as to any material facts and the debtor is entitled to judgement as a matter of law. The *Motion for Summary Judgment* filed by the debtor is due to be granted and judgment is due to be entered in favor of the debtor and against the defendants to the extent that the Court has recognized the sale to be void; however, the debtor's request for damages is due to be denied.

4. *Objection to Motion for Summary Judgment by Plaintiff* filed by Tom D. Kimbrel and Minor Heights Fire District is due to be overruled;

5. *Motion for Relief from Automatic Stay* filed by·Tom D. Kimbrel is due to be denied;

6. *Objection to Relief from Stay* filed by United Companies Lending Corporation is due to be sustained:

7. *Objection to Claim* No. 9 of Tom D. Kimbrel, filed by the debtor is due to be sustained;

**31.** If the debtor does not pay future assessments, the District must decide whether this Court must be consulted before another sale is instituted.

8. *Amendment to Schedules* filed by the debtor is due to be allowed in the amount of $3,796.54 in favor of Tom D. Kimbrel and the *Motion to Modify Plan Payments* filed by the debtor is due to be granted and the debtor's plan payments increased to $110.00 bi-weekly;

9. *Objection to Amendment* filed by Tom D. Kimbrel is due to be overruled;

10. *Motion for Sanctions, Pursuant to Rule 11 F.R.C.P.* filed by Tom D. Kimbrel is due to be denied;

11. *Motion for Sanctions, Pursuant to Rule 11 F.R.C.P.* filed by the Minor Heights Fire District is due to be denied.

A separate order will be entered in conformity with this opinion.

### ORDER

In conformity with and pursuant to the Memorandum Opinion entered contemporaneously herewith, it is **ORDERED, ADJUDGED AND DECREED** that:

1. *Motion to Dismiss Pursuant to Rule 12(b)(6) F.R.C.P.* [Proceeding No. 6 in AP 97–00311] filed by Minor Heights Fire District is **DENIED;**

2. *Defendant's [sic] Motion for Summary Judgment* [Proceeding No. 32 in AP 97–00311] filed by Minor Heights Fire District and Tom D. Kimbrel is **DENIED;**

3. There are no genuine issues as to any material facts and the debtor is entitled to judgement as a matter of law and that the *Motion for Summary Judgment* [Proceeding No. 28 in AP 97–00311] filed by the debtor is **GRANTED** and judgment is entered in favor of the debtor and against the defendants to the extent that the Court has recognized the sale to be void. The debtor's request for damages is **DENIED;**

4. *Objection to Motion for Summary Judgment by Plaintiff* [Proceeding No. 34 in AP 97–00311] filed by Tom D. Kimbrel and Minor Heights Fire District is **OVERRULED;**

5. *Motion for Relief from Automatic Stay* [Proceeding No. 19 in 94–05201] filed by Tom D. Kimbrel is **DENIED;**

6. *Objection to Relief from Stay* [Proceeding No. 24 in 94–05201] filed by United Companies Lending Corporation is **SUSTAINED,** to the extent that the Court has jurisdiction;

7. *Objection to Claim* [Proceeding No. 21 in 94–05201] No. 9 of Tom D. Kimbrel, filed by the debtor is **SUSTAINED;**

8. (a) The District's lien against the property is assigned by operation of Code of ala.1975 § 11–48–53 to Mr. Kimbrel;

 (b) *Amendment to Schedules* filed by the debtor is **ALLOWED** in the amount of $3,796.54 and the *Motion to Modify Plan Payments* [Proceeding No. 15 in 94–05201] is **GRANTED** and the debtor's payments are to increase to $110.00 bi-weekly;

9. *Objection to Amendment* [Proceeding No. 18 in 94–05201] filéd by Tom D. Kimbrel is **OVERRULED;**

10. *Motion for Sanctions, Pursuant to Rule 11 F.R.C.P.* [Proceeding No. 12 in AP 97–00311] filed by Tom D. Kimbrel is **DENIED;** and

11. *Motion for Sanctions, Pursuant to Rule 11 F.R.C.P.* [Proceeding No. 13 in AP 97–00311] filed by the Minor Heights Fire District is **DENIED.**